LOTTIE CONWAY

*vs.*

LEWISTON AND AUBURN HORSE RAILROAD COMPANY.

Androscoggin.    Opinion April 15, 1897.

*Negligence.    Cause.    Street Railway.    Passenger.*

</div>

No action for negligence will lie when the defendant's negligence has no causal connection with the plaintiff's injury.

When the defendant's act or omission is not the real or proximate cause of the injury, but only affords the occasion for a purely accidental occurrence causing damage without legal fault on the part of any one, no action can be maintained.

The plaintiff, in alighting from one of the defendant's open cars of a horse street railway, accidentally stepped on a rolling stone lying in the street between the car and the sidewalk, and received an injury to her ankle. *Held;* that in determining the question of the defendant's negligence, it is proper to consider that the company could not select the places in the streets where its track should be laid or its cars run. It could not construct nor control any places at which passengers were to stop on or off its cars. It had to locate its track and run its cars where the public authority directed. It had to leave the centre, sides and surface of the streets to the same authority. Passengers entering or leaving the cars had to use the streets in the condition in which they were left by the authority in control of them. Such passengers were not in the care of the company till they got on the car. They were no longer in its care when they stepped off the car. And, in this

case, the defendant's cars were drawn by horses and operated without regular stations or established places for passengers to get on and off the cars.

In alighting from one of the defendant's cars in the evening a short distance from a street-crossing, the plaintiff stepped on a rolling-stone lying in the street between the car and the sidewalk and sustained a fracture of the ankle. She recovered a verdict of $1183.33 for negligence imputed to the defendant company by reason of the failure of the conductor to stop the car at the crossing, and his invitation and proffered assistance for her to alight at a point described as a ditch and a dangerous and unsuitable place.

*Held ;* that the evidence wholly fails to establish any liability on the part of the defendant company. Under the existing circumstances and conditions, the failure of the conductor to stop the car precisely at the crossing cannot be deemed legally culpable; nor was the place of alighting so difficult and unsuitable as to render it actionable negligence to permit a vigorous young woman to step down from the side board of the car, either with or without assistance.

*Also ;* it was undoubtedly the duty of the conductor to exercise all reasonable care, diligence and prudence to ascertain the conditions existing at all points where the car was required to stop and otherwise to promote the convenience and guard the safety of passengers at all times when entering or leaving the car. But he had no reason to apprehend danger at the point where the plaintiff alighted, and had no information to give her which she did not already possess.

See *Conway* v. *L. & A. Horse R. R. Co.*, 87 Maine, 283.

On Motion by Defendant.

The case appears in the opinion.     .     .

*A. R. Savage and H. W. Oakes*, for plaintiff.

Degree of care: Counsel cited, in addition to the cases on their brief to be found in 87 Maine, 283, *Edwards* v. *Lord*, 49 Maine, 279; *Knight* v. *Portland, etc., R. R. Co.*, 56 Maine, 234.

Proximate cause: *Willey* v. *Belfast*, 61 Maine, 569.

The conductor chose his own place to stop. If, under the existing circumstances, the locality, condition of the street and darkness, it was dangerous, it was his duty to take suitable precautions to guard passengers from the danger. Or, laying aside any claim to disputed territory in this case, we insist that he was certainly bound not to invite and assist the passenger into danger; and that if he did so, the defendant was liable. Wood, Railway Law, 1113 Note and 1121-1130; *Filer* v. *N. Y. Central R. R. Co.*, 59 N. Y.

351; *Burns* v. *R. R. Co.*, 50 Mo. 139; *Warren* v. *Fitchburg R. R. Co.*, 8 Allen, 227; *Clark* v. *R. R. Co.*, 36 N. Y. 135; *Nashville R. R. Co.* v. *Erwin*, 3 Am. & Eng. R. R. Cases, 465; *Pittsburg R. R. Co.* v. *Krouse*, 30 Ohio St. 222; *Jeffersonville R. R. Co.* v. *Swift*, 26 Ind. 459; *Indianapolis R. R. Co.* v. *Farrell*, 31 Ind. 408; *Prager* v. *The Bristol & Exeter R. Co.*, 24 L. T. Rep. (N. S.) 105, (Ch. J. Cochburn.); *Sweeny* v. *Old Colony, etc., R. R. Co.*, 10 Allen, 368; *Gaynor* v. *Old Colony, etc., R. R. Co.*, 100 Mass. 208.

*Wallace H. White, Seth M. Carter, and W. F. Estey,* for defendant.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITEHOUSE, STROUT, JJ.

WHITEHOUSE, J. On the evening of August 21, 1892, the plaintiff was a passenger on one of the defendant's open cars, going up College Street in Lewiston, and in alighting from the car near the corner of College and Skinner streets, she accidentally stepped on a rolling stone lying in the street between the car and the sidewalk and received a sprain or fracture of the ankle.

At the former trial of this case the jury returned a verdict for the plaintiff for $347.17. At that time the precise nature and extent of the injury or the question of complete and permanent recovery had not been determined. But at the second trial Dr. Garcelon, one of the attending surgeons, testified as follows in relation to the recovery: "I think it is as perfect as anything could possibly be. The limb speaks for itself. The appearance of the limb is very normal. There is no deformity." Yet the jury at this trial rendered a verdict for $1183.33; and in presenting the motion for a new trial the counsel for the defendant calls attention to this fact as an indication of the probable influence of sympathy, or of bias and prejudice, in the deliberations of the jury respecting the question of liability as well as the amount of damages.

The plaintiff claims that when the car reached the corner of Vale Street, a point quite distant from Skinner Street, she asked

the conductor to stop for her to get off at the corner of College and Skinner streets; that she made no further request and gave no signal to the conductor as the car approached her destination; that the conductor did not heed her request to stop the car at the corner, but went beyond the crossing, and that she was aware of the fact that the car was "round the corner" or "beyond the crossing" before it stopped. Her manner of alighting is thus described in her testimony: "When the car stopped, the conductor stood by the side of the seat where I was sitting and I got up to get out of the car and he took hold of my hand to help me, and as I got out I stepped on a rock on which I suppose my ankle turned and broke."

It is charged in the plaintiff's writ that the failure of the conductor to stop the car for the plaintiff to get off at the crossing, and his invitation and proffered assistance for her to alight a short distance therefrom at a point on Skinner Street, described as a ditch and a dangerous and unsuitable place, constituted actionable negligence on the part of the defendant company.

It will be observed, however, that in her account of the accident above quoted, the plaintiff makes no reference to the existence of a ditch at the point where she stepped from the car, and no complaint of an unexpectedly long or difficult step from the car to the ground; but in another part of her testimony, she compared it in length to the step from the floor of the court room to the platform on which she stood when testifying. It appears, also, that in describing the accident to the surgeon, she stated in substance that in going from the car to the sidewalk, after she alighted, she stepped on a stone and turned her ankle; and again that she "got out from the car and stepped on a rock and turned her ankle." It is true that, in answer to further and specific inquiries, she testifies that she stepped into the ditch, but there is no claim or suggestion in her testimony that the length of the step from the car to the ground was the cause of the accident.

It also appears from her testimony that the car had only passed beyond the crossing or "over the corner" about the "length of the judge's desk" before it stopped.

It is provided by the city ordinance, in force at that time, that when a car is required to be stopped at the intersection of two streets, it shall be " stopped so as to leave the rear platform slightly over the further crossing." The plaintiff was sitting at the end of one of the transverse seats " about the middle " of the open car and would be expected to alight, as she did, from the side of the car at the point opposite her seat. Thus, if the car had been stopped immediately after the rear platform had passed the crossing, she would not have alighted precisely on the crossing, but probably fifteen feet beyond it and seven or eight feet beyond the point where the ditch commenced. Indeed, it is not insisted in argument that the mere failure to stop the car, so that the passenger could alight on the crossing, was improper. Nor is it claimed that the existence of a small rolling stone by the side of the track would necessarily render the street at that point a dangerous place to alight. It is still contended, however, that the point in question was not a suitable place for the plaintiff to alight in the evening, that the conductor selected it as the place for her to get off, and that the defendant company should be held liable for the act of the conductor in thus inviting and assisting the plaintiff into danger.

But aside from the omission of the plaintiff, in her account of the accident to ascribe her injury to the depth of the ditch, as noted above, it appears from the testimony of the civil engineer that the easterly rail of the track was seven and one-half feet from the centre of the ditch, that the ground sloped gradually from the rail to the bottom of the ditch and that at no point was the ditch more than a foot in depth. It is not claimed that there was any dangerous excavation or any special depression at the particular point where the plaintiff stepped from the running board of the car to the ground. It was a well wrought street with a smooth surface and a regular slope from the rail to the sidewalk.

In determining the question of the defendant's negligence, it is proper to consider that the company " could not select the places in the street where its track should be laid or its cars run. It could not construct nor control any places at which passengers

were to step on or off its cars. It had to locate its track and run its cars where the public authority directed. It had to leave the centre, sides and surface of the streets to the same authority. Passengers entering or leaving the cars had to use the streets in the condition they were left by the authority in control of them. Such passengers were not in the care of the company till they got on the car. They were no longer in its care when they stepped off the car." *Conway* v. *Horse R. R. Co.*, 87 Maine, 283. It should also be remembered that the defendant's cars were drawn by horses and operated without regular stations or established places for passengers to get on or off the cars. They were not run from station to station only, but upon signal or request stopped as near the point desired as practicable either to take on or to discharge passengers. It was undoubtedly the duty of the conductor to exercise all reasonable care, diligence and prudence to ascertain the conditions existing at all points where the car was required to stop and otherwise to promote the convenience and guard the safety of passengers at all times when entering or leaving the car. But in this case the conductor had no special information to give the plaintiff in relation to the condition of Skinner Street which she did not already possess. He denies that she informed him at Vale Street that she wished to get off at the corner of Skinner Street, and states that the only signal she gave to stop the car was given just as the car was rounding the curve at Skinner Street, and that the car was thereupon stopped as soon as it reasonably could be. He also testifies that she promptly stepped off the car into the street without any suggestion or assistance from him, and that she did not fall to the ground as she stated, but walked to the sidewalk and he had no knowledge that she met with an accident until a day or two afterward. Daniel McIntire, a passenger on the car at the same time, and a disinterested witness, fully corroborates the conductor's testimony that the plaintiff gave a signal to stop at the corner of Skinner Street, that she stepped off the car without assistance from the conductor and started to walk off toward the rear of the car and that he did not see her fall.

But assuming the plaintiff's description of the accident to be

correct, it is the opinion of the court that the evidence wholly fails to establish any liability on the part of the defendant.   As already seen, the failure of the conductor to stop the car precisely at the crossing, cannot be deemed legally culpable.   Nor was the place of alighting so difficult and unsuitable as to render it actionable negligence for the conductor to permit a vigorous young woman to step down from the car either with or without his assistance.

But even if any act or omission of the conductor respecting the place or manner of alighting could be deemed culpable negligence, the defendant is not chargeable with it in this action, for the reason that it had no causal connection with the plaintiff's injury. There was no greater probability that she would step upon a rolling stone at that point than at the crossing or at any other point on the street.   Her injury was not the ordinary or probable result of stopping at that particular point, but was due to an unexpected event which could not reasonably have been anticipated.   The negligence imputed to the conductor was not the real or proximate cause of the injury.   It simply presented an opportunity for the operation of the true cause, the movement of a rolling stone upon which the plaintiff unfortunately stepped.   It only afforded the occasion for a purely accidental occurrence causing damage without legal fault on the part of any one.   *Conley* v. *Express Co.*, 87 Maine, 352.

<div align="right">*Motion sustained.*</div>