FULLER *v*. DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—PLACE OF ALIGHTING—NEGLIGENCE—STREETS.
   In selecting a place for passengers to alight, a street rail-
   way is bound to exercise reasonable care to stop the car
   at a safe place, and is liable if a passenger is required to
   alight at a point in a street where a sufficient defect or
   depression exists to render it unsafe[1]

2. SAME.
   But a worn place in the pavement, not over three inches
   in depth and twelve inches in area, in which plaintiff fell,
   spraining her ankle, was not such a dangerous place as to
   charge defendant with liability for stopping the car and
   requiring plaintiff to alight at a point about one pace dis-
   tant.

Error to Wayne; Hosmer, J.   Submitted November
21, 1912.   (Docket No. 151.)   Decided July 9, 1913.

Case by Jessie Fuller against the Detroit United
Railway for personal injuries.  ˙Judgment for defend-
ant on a directed verdict.   Plaintiff brings error.   Af-
firmed.

*Sloman & Sloman,* for appellant.

*Corliss, Leete & Joslyn (Frederic T. Harward,* of
counsel), for appellee.

BIRD, J.   The plaintiff began  this suit to recover
damages for injuries suffered by her in consequence
of the failure of the defendant to provide a safe place
for her to alight from a car on which she was riding
on the afternoon of November 4, 1909, in the city of
Detroit.   She was a passenger on a Trumbull avenue

[1] The question of the liability of a street railway company for
stopping car at improper place for passenger to alight is treated
in a note in 16 L. R. A. (N. S.) 467.

car, and when it made its regular stop at the corner of Congress street and Woodward avenue she passed out of the car and down the steps to the pavement. In taking the first step away from the car toward the curb, she stepped with her right foot into a depression in the pavement and in so doing struck her foot against the corner of a manhole cover, turning her ankle and causing a severe sprain. The area of the depression was 12 inches by 12 inches and its maximum depth was 3 inches. When the testimony was completed, it was the opinion of the trial court that plaintiff had made no case for the consideration of a jury, and it therefore directed a verdict for the defendant. The plaintiff assigns error upon the refusal of the trial court to submit to the jury the question as to whether the place was a safe one.

The degree of care to be exercised by a street railway company in selecting a place for its passengers to alight was clearly defined in the case of *Spangler* v. *Traction Co.*, 152 Mich. 405 (116 N. W. 373), where it was said:

"Ordinarily a passenger, having safely alighted from a street car, becomes at once a traveler upon the highway, and his duty and the duty of others towards him have no relation to the reciprocal duties which a moment before existed between the carrier and himself. *Creamer* v. *Railway Co.*, 156 Mass. 320 ([31 N. E. 391] 16 L. R. A. 490 [32 Am. St. Rep. 456]); *Bigelow* v. *Railway Co.*, 161 Mass. 393 [37 N. E. 367]; *Conway* v. *Railroad Co.*, 87 Me. 283 [32 Atl. 901]; *Id.*, 90 Me. 199 [38 Atl. 110]; *Platt* v. *Railroad Co.*, 2 Hun (N. Y.), 124. But as a general rule it is the duty of the street-railroad carrier to at least exercise proper care to see that the place of alighting is safe—not to stop a car for alighting passengers at a place known to be unsafe."

There would seem to be little doubt that the defect complained of in this case was situate near enough to defendant's track to make it an alighting place and to

render the defendant liable if it can be said that the place was an unsafe one.

The important question, therefore, arises as to whether the place where plaintiff was invited to alight was a safe one. It is a well-known fact most pavements have more or less depression worn into them by the passing traffic, and it is equally well known that they cannot be kept as even and smooth as a sidewalk by reason of the use which is made of them. Pavements are not especially designed for the use of pedestrians, and, when they are used by them, it must be done with these differences in mind. Many pavements with such depressions are in daily use in our cities by pedestrians and vehicles with no thought of their being unsafe, and they are not unsafe to one who is in the exercise of ordinary care. The place where the car stopped was not, in our opinion, an unsafe place for the landing of passengers.

As the case was disposed of by the trial court in conformity with this view, the judgment will be affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and OSTRANDER, JJ., concurred.