PARKER P. BURLEIGH, in equity, *vs.* RUSSELL H. WHITE, administrator, & others.

Aroostook. Opinion July 8, 1879.

*Equity,—practice. Partnership. Lien.*

It is not an objection to the report of a master in chancery that he acted under a general mandate only, the master having performed the services that were intended to be required of him and no more.

A partner in the purchase and permitting of lands, who by agreement puts his personal services against the furnishing of capital by his copartner, has the right to charge against the partnership any sums necessarily expended by him for the personal services of others in and upon the common property.

In a bill in equity brought by an equitable owner against the heirs of a co-owner for the title of real estate and its earnings accruing before the death of their ancestor, the court will, under a prayer for general relief, entertain jurisdiction of all matters growing out of the property during the pendency of the suit between the parties thereto.

If one owner has converted to his own use more than his proportion of the proceeds from the joint estate, the court, in making a final settlement between the parties, will decree to the other owner a lien for such excess upon the estate left, with suitable provisions to make the lien effectual.

ON REPORT.

BILL IN EQUITY. The material allegations of the bill and

answer will be found in 64 Maine, 23. When the case was before the court as reported above, the bill was sustained and the estate declared subject to the resulting trust claimed. The opinion then ordered a master to be appointed to ascertain the true condition of the mutual demands between the parties. Accordingly a master was appointed, and on the coming in of his report, the case, by agreement of the parties, was made law on the report, the court to award such final or other decree as they adjudged proper, the report to be open to either party the same as if exceptions had been filed.

The report was as follows :

" That objection was seasonably taken by the counsel for the defendants to any proceedings before me, because no decretal order defining the duties of the master was presented, which objection I overruled. The defendants also seasonably objected to the introduction of any evidence concerning moneys received by William H. Burrill or Russell H. White, as administrators of the estate of James White, deceased. This objection was also overruled by me.

" That I find the true condition of the mutual demands between the parties to be as stated on pages six to twenty, inclusive, of the schedule hereunto annexed and forming part of this report; and that the balance due the complainant on the first day of March, A. D. 1878, inclusive of interest computed on each item of said demands, to that date, was $8,731.44. In reaching this conclusion, I have allowed the charge of the complainant for scaling, surveying, examining lands, &c., as per paper hereto annexed, marked 'A' amounting with interest as aforesaid to $1,151.46. But if this court shall determine that under the agreement set forth in the complainant's bill, said charges last named are not allowable, then one-half of the amount is to be deducted from said balance, leaving due the sum of $8,155.71, as by page twenty-one of said schedule.

" That I find the true condition of the mutual demands between the complainant and said James White, at the time of the decease of said White, December 24, A. D. 1870, inclusive of interest computed as aforesaid, to be stated as on paper ' B '

hereto annexed and forming part of this report, and that the balance due the complainant at that date, was $1,931,21. But if one-half of the amount of the charges for scaling, &c., as per paper marked 'A' before referred to are not allowable, then I find a balance of $1,355.48, due the complainant from said James White, at the time of his decease as aforesaid.

" And I further find and report that on the tenth day of August, A. D. 1871, by their deed of quitclaim of that date, duly executed and recorded, Annette W. White, and Camilla A. White, two of the defendants, for a consideration of three thousand dollars conveyed to Russell H. White, co-defendant, 'all of' their 'right, title and interest in and to all real estate in the state of Maine, formerly owned by James White, late of Belfast, now deceased,' and that on the twenty-fifth day of August, A. D. 1871, by their deed of quitclaim of that date, duly executed and recorded, Eugene L. White, and Willis T. White also co-defendants, conveyed to said Russell H., 'all' their 'right, title and interest in and to all the real estate belonging to James White, deceased, late of Belfast.' The nominal consideration in said deed last named, was one dollar, but it appeared by testimony introduced by the defendants, that the real consideration paid was three thousand dollars. It also appeared that prior to receiving said conveyances, said Russell H. caused an examination to be made at the registry of deeds, in Aroostook county, concerning the title to the lands of which the said James White was seized at the time of his death, and found the same unincumbered. To the introduction of said deed, and to evidence concerning the same, said complainant made seasonable objection, which objection I overruled.

" I find that at the date of said conveyances to said Russell H., viz: on the twenty-fifth day of August, A. D. 1871, the true condition of the mutual demands between the parties to be as stated on paper marked 'C' hereto annexed and forming a part of this report, and that the balance then due the complainant, inclusive of interest to the first day of March, A. D. 1878, was $2,050.16. But if the charges for scaling, etc., as per paper marked 'A' are not allowable, then I find a balance due the complainant of $1,474.43.

" And I further find and report that from the date of the appointment of said Russell H. White, as administrator of the estate of said James White, viz: on the tenth day of December, A. D. 1872, to March 1, 1878, inclusive of interest to the said last named date, he the said Russell H., received on account of the lands in question, the sum of $7,532.21, and disbursed the sum of $1,329.89, as per paper marked ' D ' hereto annexed and forming part of this report.  In addition to said amount of disbursements, he paid certain notes given by said James White to Theophilus Cushing, for the lands in Littleton, amounting, with interest to said last named date, to $9,396.52, as per paper ' D ' before referred to.  As there was no evidence that said notes were secured by a mortgage on said lands, I have regarded the amount of the same as cash payments made by said James White, at their respective dates in the general statement of mutual demands herein first made.

" And I further find and report that up to the date of said conveyances to said Russell H. White, viz : on the twenty-fifth day of August, A. D. 1871, said William H. Burrill, administrator of the estate of said James White, received on account of said lands the sum of $679.01, and disbursed the sum of $277.49 ; and that the amount received by him during the whole period of his administration was $8,928.46, and that the amount disbursed was $1,890.56.  These several amounts, which include interest computed to March 1, 1878, appear by paper marked ' E' hereto annexed and forming a part of this report.

" And I further find and report that the balance due from the complainant to said James White, on private or separate accounts, with interest computed to March 1, 1878, is $3,794.76, as per page nineteen of the schedule aforesaid.  I find that all the accounts between the parties relative to Linneus lands, have been adjusted, and that on the 27th day of October, A. D. 1870, a balance of $3,683.86, was then admitted by the complainant to be due on old notes to said White.

" And I further find and report that a certain paper marked ' A ' introduced by the complainant, admitted to be in the handwriting of said James White, had no probative weight with me

except as sustained by other evidence ; and that I found no items therein sustained by force of said paper alone.

" And I further find and report that neither the complainant, nor said Russell H. White, in his individual capacity or as administrator of the estate of said James White, or for services claimed to have been rendered by said James White, have proved any claim for personal services in relation to said lands, except so far as embraced in said paper ' A ' hereto annexed.

" And I further report that by agreement of counsel this report made by me as master is to be entered at *nisi prius*, as ' law on report,' and it is to go to the full court, and is to be open to either party the same as if they had filed exceptions thereto."

*A. W. Paine*, for the complainant.

· *J. Baker*, for the defendants.

I. The master had no jurisdiction because the cause was not committed to him by any decretal order defining his duties and powers. Adams Eq. 375, 379, 384. *Simmons* v. *Jacobs*, 52 Maine, 147.

II. The complainant is not entitled to recover in this suit on any accounts that accrued after the death of White. The decision must be within the scope of the allegations and in accordance therewith. The allegations and the scope of the bill are confined to transactions that took place prior to the death of White, or existing at the time of his death. Money in his hands and due from him at the time of his death, and notes and demands due to him at that time arising from sales of lands or the stumpage, only can be included in the final judgment.

The question of title is *res adjudicata*. The present inquiry relates solely to accounts and choses in action which vest in the administrator and not in these heirs. A large part of the balance found due from White was not derived from any notes or contracts that accrued prior to his decease. The sum of $1,931.21 only is the maximum recoverable.

From that sum should be deducted the amount charged by the plaintiff for "scaling, surveying and examining the lands." That was included in his agreement, and he was to do it without com-

pensation. But he was in the legislature and land agent during a large part of the time when these services were rendered, and so he could not render them himself in person as he agreed to do, but employed others to render them for him, and not for the joint operation; and of course he has no more right to charge for them than if he had rendered them himself. It was his duty and part of his agreement to furnish these services without charge, without compensation, and in set off and consideration of the advancements and hazards of White. He might render them *per se* or *per alium* as he pleased, but not at the cost of White in either case. The $1,931.21 should therefore be reduced to $1,355.45, as the largest sum the plaintiff can recover, with interest from March 1, 1878.

III. But if the court should overrule this position, then we contend that the balance of accounts must be struck at the time Russell H. White took his deeds from four of the six heirs of the estate, August 10 and August 25, 1871. These deeds were both recorded prior to the commencement of this suit. The purchases were made in good faith, for a valuable consideration of $3,000 to each heir, and made by said White after searching the records and finding no incumbrance on the property, and without any knowledge or belief on his part of any secret trust.

If it is said that this title is not valid against this secret trust, we claim that it is, and must be held so until it is judicially settled in a proper process and with an appropriate issue. White is unquestionably entitled to have that question litigated and a deliberate and binding decision made upon it. This he has not had, and cannot have in this bill, because it is not directly in issue by the pleadings, but only collaterally; and no decision that could be made on that question under this bill and the pleadings would prevent White from litigating it again.

PETERS, J. We think the objection to the master's acting in the case is not well taken. He had a general mandate only, but did not exceed the power that would have been committed to him had his duties been prescribed by the court with more particularity or detail. No inconvenience has arisen from it. His

examinations and report fully cover all the grounds that either side rests its questions upon.

We can have no doubt that the complainant should be allowed for such money as he paid out for tracing lines, scaling lumber and the like. It is not his own services that he asks pay for, but to have the sums refunded to him which he has paid out. The evidence before the master is not before us. The presumption is that this account was properly examined and allowed. We think the allegations in the bill in relation to the services of the complainant as joint owner or copartner, referred to what he was to do in respect to the property himself. It does not follow that no outside services were necessary.

Another question presented is, whether the auditor should state the accounts as far as items are concerned which have accrued from the property since the death of White, the original holder of the title to the lands. In other words, shall the land and all matters and accounts be settled up to this time, or only up to the death of White? The bill was originally against the administrator and heirs of James White, and now stands by amendment against his heirs, one of whom is the administrator and, subject to the complainant's claim, the sole owner of the property. The whole accounts are one subject matter, the pursuit of one inquiry, and relate to the same estate. No difficulty can arise from making in this proceeding a final settlement. On the contrary, it must be a positive benefit to both sides. Time, labor and money will be saved thereby. Two suits should never be required where all matters can be adjusted in one. The original claim only is thereby disposed of, with such matters as have arisen out of the same *pendente lite*. The gist of the bill is virtually against the property and the fruits of the property. A supplemental bill is never necessary where the original bill can accomplish a just result. Having the bill in our hands, under the prayer for general relief, all necessary relief can be afforded. This is in accordance with the general rules laid down by all authors on the subject of equity. *Nelson* v. *Bridges*, 2 Beav. 239. Story Eq. Jur., § 794, and note. If this were not so, a part of the subject matter of the suit could be abstracted and carried away while the

plaintiff's claim is being resisted and delayed by the defendant, without adequate remedy for it.

The rights of all the parties can be preserved by the form of the decree. All the respondents but one are now virtually out of the controversy, but should not recover costs, as they are but nominal parties and have been subjected to no expenses in the litigation. Their assignee has been the only active defendant.

The bill is sustained with costs. The complainant is declared to be the owner of an undivided half of the lands remaining unsold, and of one-half of all sums of money, in any form, due or to be due, for lands, or stumpages therefrom, sold and not accounted for in the report of the auditor; and entitled to receive a conveyance of such shares from Russell H. White in any capacity or right in which he is the holder of the same. The complainant is to have a lien upon the other half of such lands and sums of money for the sum of eight thousand and seven hundred and thirty-one dollars and forty-four cents, and interest thereon from March 1, 1878, and for the costs of this suit. The principal respondent and his predecessor in title having taken and converted to their use a portion of the common estate, it is equitable, and in accordance with the principle regulating copartnerships and co-ownerships, that the complainant should be remunerated therefor from the same property. Therefore the master already appointed shall appraise and set off to the complainant such undivided portion of the half of the lands and claims last named as will be equal in value to the sum and interest and costs aforenamed; land to be first taken in preference to the choses in action; a suitable conveyance and transfer of the appraised property to be made by the respondent, Russell H. White, to the complainant, unless an amount equivalent to the amount of the appraisal shall be paid to the complainant, or be secured to him, by the respondent, upon such terms as a single judge may settle when the master's report again comes in. A decree in accordance with these terms and conditions to be entered as a final determination of all matters under this bill in dispute between the parties. *Sampson* v. *Alexander*, 66 Maine, 182.

APPLETON, C. J., WALTON, BARROWS, DANFORTH and LIBBEY, JJ., concurred.