THE JUNIOR ORDER BUILDING AND LOAN ASSOCIATION

*v.*

REDFORD SHARPE et al.

[Filed July 10th, 1902.]

1. Land of a judgment debtor was sold under execution, the debtor knowing of the advertisement for the sale, and procuring one adjournment thereof. The purchaser went into possession and collected rents, with the knowledge of the judgment debtor, and mortgaged the premises to pay the price and satisfy prior liens. The purchaser sold the premises and his vendee went into possession. The judgment, under which the execution sale was made, was void for failure to comply with the acts relating to docketing of judgments on bill filed to foreclose the mortgage and charge the land upon the mortgage and payments.——*Held*, that the judgment debtor was not estopped from recovering the premises as against the mortgagee, it not appearing that the purchase or loan was induced by any positive acts or statements on the part of the owner or that he knew at the time of those transactions that the execution sale was void.

2. The mortgagee was entitled to have the amount paid to discharge the prior tax and judgment liens declared a lien on the land.

3. Inasmuch as the recovery of the land by the owner in an action of ejectment was a repudiation of the application of the proceeds of sale to satisfy the judgment, it remained unsatisfied so that the amount paid on the execution sale could not be a charge on the land. *Semble*, the purchaser might apply to the court of law to proceed upon the judgment.

4. Where a bill prays for special relief on several grounds, and, also, general relief, a general demurrer must be overruled if any claim of the bill is sustained.

5. If the complainant, on the facts stated in a bill, is entitled to any equitable relief whatever, and there is a prayer for general relief, this may be granted, even if the special relief claimed be not warranted by the facts, or if he mistakes the principles of equity upon which his right to relief is founded.

On demurrer to amended bill.

*Mr. Reuben A. Heller,* for the complainant.

*Mr. Frank E. Bradner,* for the defendants.

Junior Order Building and Loan Association *v.* Sharpe.

Emery, V. C.

The bill demurred to discloses the following facts: The defendant Sharpe purchased lands belonging to the defendant Carroll, at a sheriff's sale, made by virtue of an execution issued out of the supreme court, upon a judgment docketed in the supreme court, from the Essex county common pleas. The lands were, at the time of the sale, subject to a prior judgment against Carroll for $174.78 and to taxes and assessments of $221. The price bid and paid by Sharpe at the sheriff's sale was $275, and, after receiving the sheriff's deed, Sharpe took possession of the premises and received the rents and profits. While so in possession Sharpe applied to the complainant for a loan of $600, to be secured by a first mortgage on the premises, and the proceeds of which were to be applied primarily to the payment of the prior judgment and liens and the payment of the purchase-money, both Sharpe and the complainant supposing that the execution sale conveyed a valid title against the judgment debtor. The previous liens and the purchase-money were so paid by complainant out of the money advanced to Sharpe and secured by the mortgage, and the judgment and taxes were canceled of record, in order to make complainant's mortgage, which declared that it was, in part, given for purchase-money, the first lien upon the premises. At the time of the advances by complainant for this purpose and of the payment and cancellation of the mortgage Sharpe was in possession of the premises, receiving the rents, which entry and possession was, as the bill alleges, permitted by the defendant Carroll, who knew of the advertisement for sale under the execution, and had procured one adjournment of the sale from the sheriff, and knew of the sale, although he was not present. Subsequently Sharpe conveyed the premises to one Grimshaw, who also took possession and collected the rents for one month, when she was forcibly dispossessed by Carroll. An action of ejectment brought by Grimshaw against Carroll was decided adversely to Grimshaw, both in the supreme court and in the court of errors and appeals, upon the ground that the execution and the docketed judgment upon which it was issued were null and void for fail-

ure to comply with the provisions of the acts relating to the docketing of the judgment. The bill alleges that Carroll is, by reason of the facts stated, equitably estopped from setting up his title to the premises to defeat complainant's mortgage, and prays that the sums paid for the purchase-price and the payment of the previous liens upon the premises may be declared to be liens upon the premises, and prays for general relief. Carroll demurs generally for want of equity, and as to the estoppel claimed demurs because the facts set out do not create an estoppel, or show that complainant was induced to part with its money by reliance upon any act or statement of the defendant. The facts disclosed by the bill are not sufficient to create an estoppel against Carroll from asserting his title to the premises. Neither the purchase, the loan nor the payment of the previous liens appear to have been induced by any positive acts or statements on the part of the owner, made for the purpose of inducing either the purchase or the investment, nor does it appear that the owner himself, at the time of the purchase or investment, knew of the legal defects in the judgment, or knew that the belief of either the purchaser or complainant as to the validity of the title was a mistaken one. Such knowledge on the owner's part was here necessary as a basis for creating an equitable estoppel against the assertion of a true title. The mere failure of the owner to attend the sale, his acquiescence, for a period, in the collection of the rents by the purchaser and his failure to assert his title at once against the invalid sheriff's sale are not sufficient to deprive him of his title either as against the purchaser or mortgagee. In *Sumner* v. *Seaton, 2 Dick. Ch. Rep. 103, 111, &c. (1890)*, Vice-Chancellor Pitney, in an exhaustive opinion, considered the effect of the decisions, both in our state and elsewhere, as to estoppels by mere acquiescence and silence relating to title to land or interest therein, reaching the conclusion that knowledge on the part of the owner as to the true state of his title, and knowledge also on his part that the purchaser or claimant was acting under an erroneous belief as to the true state of the title, were circumstances necessary to be proved in order to create such estoppel. In reference to estoppels of a judgment

debtor from asserting his title against a purchaser at sheriff's sale, or his grantees, there is a question, in my mind, whether an estoppel can be created by mere acquiescence and silence, in the absence of acts or conduct showing active participation on the debtor's part to induce the purchase, because the sale is made *in invitum* and by an officer of the law, in the exercise of a statutory power, against the will of the debtor. Under ordinary circumstances the rule of *caveat emptor* must apply to such sales, and certainly no more liberal rule than the one above stated can apply, and the present case does not come within any of the decisions allowing relief by way of estoppel to which I have been referred. On the facts shown in the bill there is, however, a question whether complainant has not, at least as to the prior valid judgments and liens, relief by way of subrogation to the creditor's rights. Our court of errors and appeals, in *Freichnecht* v. *Meyer, 12 Stew. Eq. 551 (1885)*, held that where the owner seeks the aid of a court of equity against the *bona fide* holder of the invalid title under a void execution sale, equitable relief will not be granted, except upon the terms of compensating for improvements made on the premises in ignorance or mistake as to the title. But when the owner does not seek the aid of a court of equity in the assertion of his legal rights, and its aid for reimbursement is invoked against his legal title, an additional question is involved. This question, whether a purchaser at a void execution or judicial sale, who has, in good faith, paid off previous valid liens, or whose money, paid for the purchase-price, has been used to pay the debts of the estate, is entitled to be subrogated to the rights of the creditors or creditor so paid off, has never been distinctly decided in this state. It has, however, been the subject of thorough judicial discussion in the courts of many states, and while the right is denied in some tribunals, the weight of authority is that such right exists. The authorities on the subject are collected in the leading digests and text-books. *21 L. R. A. 48, &c., note; 23 Am. & Eng. Encycl. L. (1st ed.) 261, 266 and notes; Freem. Void Exec. S. ¶¶ 51, 53; Bright* v. *Boyd, 1 Story 478; S. C., 4 Fed. Cas. 127, 134; Davis* v. *Gaines, 104 U. S. 386, 405 (1881);*

*Payne* v. *Hathaway, 3 Vt. 212,* referred to, with approval, in *American Dock Co.* v. *Trustees, 12 Stew. Eq. 450,* where, however, the question now considered was not involved. All authorities agree that if the holder of the legal or equitable title is obliged to seek the aid of the court of equity for relief against the *bona fide* purchaser, or his grantees, this will not be granted except upon the condition of doing equity. But if the owner of the title is not asking aid, the courts differ as whether, in the absence of circumstances creating equities on other grounds, equitable relief can be granted against him on the application of the purchaser of the invalid title, either for the satisfaction of prior liens, or for improvements subsequently made in good faith, in reliance on the validity of void execution or judicial sales. In relation to the discharge of previous valid liens upon the premises, the equity upon which the purchaser of the invalid title rests is taken to be of a somewhat different character from that arising on the subsequent improvements of the value of the lands. Outlays of the latter character may, with reason, be held to be necessarily made at the purchaser's own risk, and a contrary rule might result in the appropriation, directly or indirectly, of the real owner's lands, without his consent and without compensation. But as to the reimbursement for the payments made in good faith by the purchaser to relieve the lands from existing liens which were valid against the legal owner, and the payment of which necessarily enures to the benefit of the owner subsequently recovering possession, it would seem clear, on principles of equity and justice, that the owner should not have the lands relieved from the valid liens which have been paid in good faith, and that the purchaser should be repaid these sums out of the land. The manner in which this equity for reimbursements as to previous liens is worked out is on the theory of subrogation of the purchaser to the creditor's rights, or a right analogous thereto. As to the objection to this method arising from the general rule in reference to subrogation, that a mere volunteer has no right to subrogation, and that the payment in such cases must, in law, be considered as voluntary payments, the view is taken that inasmuch as it has always

been the policy of the law to encourage bidding at public execution and judicial sales, a purchaser in good faith at such sales should not, while he holds the property purchased without knowing of any defect in his title, be considered a mere volunteer in relation to his payments of previous liens upon the property, which he had the undoubted right to pay if his title were good. Not being, under such purchase, a mere volunteer, but, so long as his title under execution or judicial sale is uncontested, being a person who has an interest in the lands sold, which entitles him to redeem the outstanding liens, a court of equity will, if his title fails, reimburse the purchaser, at least to the extent of the previous valid liens paid, by subrogating the purchaser to the rights of the original creditor thereon, and charging the lands with their repayment. This view seems to me to be more consonant with the principles of equity and justice than to allow the true owner to retain, by the increased value of his lands, the benefit of the discharge of a lien thereon which has been procured by a person who supposed, and was entitled to suppose, that he was discharging a lien upon his own lands. And while it may not be equitable or proper to extend the benefit of the doctrine of subrogation to every case of payment made in mistake of legal rights, it should be extended, I think, to cases of the present class, and a payment made, under the present circumstances, to discharge the previous liens, which, by the demurrer, are admitted to have been valid liens, should be considered as made not by a mere volunteer, but, in the language of some of the cases, should be considered as made under a sort of compulsion upon the vendee to protect his own interests arising from his *bona fide* purchase at a public legal sale.

I conclude, therefore, that, upon the facts stated in the bill, the complainant is entitled to have the amounts paid to discharge liens of the previous valid judgment, taxes and assessment declared to be a lien in its favor upon the property. As to the money paid upon the purchase at the invalid sheriff's sale, the decision in *Freichnecht* v. *Meyer, 12 Stew. Eq. 563,* would seem to be conclusive that this cannot be charged upon the lands. This is upon the ground that the owner, by the recovery of his

lands sold to pay the judgment, has repudiated their application for this purpose, and inasmuch as he can therefore derive no advantage from the payment, because it is not made or ratified by him, the judgment still exists and may be pursued. The cancellation could, in such case, be set aside for the benefit of the purchaser, and the plaintiff in the judgment, if he has taken the money, could probably be required to assign the judgment, if he did not voluntarily do so. But, as the demurrer is general and must be overruled, if any claim is sustained, the denial of relief for this payment would not affect the decision. Special relief by way of subrogation was not prayed for, but the charge of a lien upon the lands is sought and a prayer for general relief is added. Failure to ask this special relief is, however, no objection to granting the relief, for the rule is that if the complainant, on the facts stated in the bill, is entitled to any equitable relief whatever, and there is a prayer for general relief, this may be granted, even if the special relief claimed be not warranted by the facts, or if he mistakes the principles of equity upon which his right to relief is founded. *Hill* v. *Beach, 1 Beas. 31, 35 (Chancellor Williamson, 1858)*. Relief of a character similar to that specially prayed, but founded on different equitable principles, may clearly be granted under the prayer for general relief. The demurrer will be overruled.