LEONE BALFE COTTRELL ET AL. *vs.* CHARLES P. COTTRELL
ET AL., INDIVIDUALLY AND AS EXECUTORS.

Second Judicial District, Norwich, April Term, 1927.

WHEELER, C. J., MALTBIE, BANKS, ELLS and YEOMANS, Js.

A judgment-file should not recite the claims of the parties or the argument of counsel.

A general prayer for equitable relief will support any decree which is consistent with the facts alleged and proved, provided the defendant is not thereby surprised or prejudiced.

The purpose of a bill of exceptions, filed under § 5839 of the General Statutes, is not to obtain a review of errors alleged to have been committed, but to anticipate the doubtful questions which may arise upon a new trial.

In 1893, the owner of a manufacturing business bequeathed all his stock to three of his sons, Calvert, Charles and Edgar, and charged their gifts with the payment to his other son, Arthur, and to his daughter, of sufficient money to equalize the distribution of his estate—an obligation upon which interest has

Cottrell *v.* Cottrell.

since been paid. When Calvert died in 1901, Charles and Edgar purchased his stock from his widow and children, the payment therefor being completed in 1921. In this latter year, in pursuance of the orally expressed wish of their father that Arthur should eventually become a part owner of the business, Charles and Edgar entered into a written contract with Arthur which provided that, in view of his desire to acquire certain shares of stock in the company at their par value, his brothers should sell and transfer them to him, and it was further agreed that in the event of his death or upon notice from him that he wished to sell, they would repurchase at the last appraised value. Thereafter the certificates of stock standing in the names of Charles and Edgar were replaced by certificates for lesser amounts, and certificates for the difference made out to Arthur but never paid for by nor delivered to him, though he received all subsequent dividends declared upon the stock represented thereby. Upon Edgar's death, his executors made the claim, in which Charles acquiesced, that the transaction of 1921 was intended as a gift of the stock to Arthur, and they proposed to deliver the certificates to him without the payment of any consideration, to prevent which the widow and children of Edgar brought the present action for injunctive relief. *Held:*

1. That, under the circumstances, the written contract must be construed according to the plain meaning of its terms, without regard to any secret understanding possibly entertained by the parties; and that, so construed, it clearly indicated that a sale, not a gift, was intended.

2. That, upon the facts found, the plaintiffs were entitled to a conditional injunction restraining the transfer of the certificates to Arthur until such time as he should pay for them upon reasonable terms to be fixed by the trial court.

3. That the prayer in the plaintiff's complaint for an unqualified order restraining the transfer was sufficient to support a decree conditioned to meet the situation actually presented upon the facts found; and that, in any event, such a decree could be granted under the plaintiff's general prayer "for such relief in law or equity as the plaintiffs may be entitled to."

Argued April 26th—decided July 25th, 1927.

ACTION for a declaratory judgment, an injunction, a decree cancelling and vacating certain contracts, an accounting, and for other relief, brought to the Superior Court in New London County and tried to the court, *Jennings, J.;* judgment rendered granting the

plaintiffs' prayers for relief in part and denying them in part, from which they appealed. *Error; judgment directed for plaintiffs in accordance with the opinion.*

*Homer S. Cummings,* with whom were *C. Hadlai Hull* and *Walter N. Maguire,* for the appellants (plaintiffs).

*Herbert W. Rathbun* and *Henry Harris,* for the appellees (defendants).

WHEELER, C. J. The plaintiffs are the widow and children of Edgar H. Cottrell and *cestuis que trustent* of several trusts under his will; they bring this action against the defendants as individuals and as executors under his will. The appeal is not taken by the plaintiffs from that part of the judgment which sought a declaratory judgment as to certain facts, rights, powers and privileges, so that we are not called upon to consider these, or to consider whether all of these matters asked for fall within the classes for which a declaratory judgment may be had. The appeal is limited to a single question involving the title to five hundred shares of the preferred stock and five hundred shares of the common stock of the C. B. Cottrell & Sons Company, and as to whether the defendants should be enjoined from transferring and delivering the stock certificates for such stock to Arthur M. Cottrell, and whether he should account for dividends upon these stocks to the estate of Edgar H. Cottrell. The facts upon which this question must be determined are these: C. B. Cottrell & Sons Company is a large manufacturing concern, founded by Calvert B. Cottrell, who, at his death in 1893, owned substantially all of the eight thousand shares of its stock. By his will he gave all of this stock to his three sons, Calvert Byron

Jr., Charles P. and Edgar H., charging their legacies with the payment to his other son Arthur and his daughter Harriet of an amount of money to compensate them for the gift of the stock to the other three. Upon this obligation interest has been paid on the principal. Byron died in 1901, and Charles P. and Edgar H. took over his stock under a contract similar in terms to the contracts involved in this case. Payments were made under the contract of sale to the widow and children of Byron, and these were completed in 1921. On May 23d, 1921, Edgar, Charles and Arthur executed a contract, which recited that whereas Edgar and Charles are the owners of the capital stock of C. B. Cottrell & Sons Company and Arthur desires to acquire the title to one thousand shares of the preferred and one thousand shares of the common stock of the company at the par value of the shares (which was $100) and Edgar and Charles desire to reserve the right to purchase these shares of stock if Arthur at any time after their acquisition desires to sell the same, therefore the agreement witnesseth, in consideration of $1 and other good and valuable considerations paid, Charles and Edgar agree to sell, assign, transfer and deliver to Arthur one thousand shares of the preferred and one thousand shares of the common stock of this company. Then follows the detailed statement of the agreement of Arthur that he will not sell, assign, transfer or hypothecate this stock without the consent of Charles and Edgar and that if he wishes to sell he will notify them, and they agree to purchase it at the price fixed by the last of the annual appraisals provided for in this agreement. And in the event of his death they agree to purchase the stock and to have the right to so purchase it at the last appraised value.

It was the intention of Calvert B. Cottrell and his

sons that the business should be perpetuated as a family concern; to that end similar contracts were made to carry out that purpose in 1901, 1908 and 1915. The company was converted into a new corporation and on or about June 1st, 1921, Edgar H. was the owner of stock in this new company evidenced by stock certificate 251 for twenty-four hundred and twenty-eight shares of the preferred, and certificate 252 for thirty-nine hundred and ninety-seven shares of the common stock. On this date the officers of this company caused new certificates of stock to be made out in the name of Arthur M. Cottrell on the stock books of the company, viz., certificate 258 for five hundred shares of the preferred and certificate 268 for five hundred shares of the common stock of this company, but these certificates were never delivered to him, and caused the word "cancelled" to be written on certificates 251 and 252, and new certificates numbers 251 and 252 to be issued to Edgar H. Cottrell for the balance. Similar transfers of a similar amount of stock were at the same time made by Charles to Arthur. Both of these transfers were made pursuant to the orally expressed wish of their father that Arthur should eventually become an active owner in the business.

The transfer of these shares of stock was made by Charles and Edgar to Arthur under and by virtue of the agreement of May 23d, 1921, and Edgar intended by it to sell these shares of stock to Arthur at a price equal to the par value of these shares, which was $100,000. Edgar did not intend at this time to make a gift of these shares of stock to Arthur. Since the transfer of these shares to him, Arthur has had and received from this company dividends at the rate of six per cent per annum on the preferred, and four per cent on the common, shares of this stock. These shares are of the value of $100,000. On the trial Arthur and

Charles claimed that in making these transfers Edgar intended to make a gift of these shares to Arthur, and they both denied any agreement on the part of Edgar to sell, or of Arthur to buy, these shares. Arthur has never paid to Edgar, nor to his estate, any sum in consideration for this transfer. Arthur claims to be the owner of certificates 258 and 268, and Charles recognizes and acquiesces in this claim. The defendants as individuals and as executors claim that Edgar made a valid gift of these shares to Arthur, and now claim the right to deliver the certificates to him.

The court reached the conclusion that, while the contract made in May, 1921, "indicates a sale, under the pleadings as they stand the relief prayed for under the third count cannot be granted."

The plaintiffs made the following claims of law: Arthur having claimed that these transfers to him were a gift to him by Edgar, and having repudiated any agreement on his part to purchase the same from Edgar, he was bound to return these shares to his estate, and that the defendants should be enjoined from transferring and delivering these certificates to him. Both of these claims the court overruled. In the judgment the court states the claim of the plaintiffs to be,—that the defendants' claim that these transfers of stock were a gift is negatived by the terms of the contract, that a sale was contemplated by the contract and therefore there was no meeting of the minds of the parties. In this court the claims of the plaintiffs are that the record shows that there was no meeting of the minds of the parties to this contract, and hence the stock should be ordered transferred to the estate of Edgar. The court includes in its judgment this statement: "As between the question of a gift or a sale, I find that after negotiations covering a period of many years, the parties determined to merge

these negotiations in a formal written contract and that their intention as expressed therein must control regardless of any secret thoughts they may have entertained on the subject at the time of its execution." The court adds to this statement: "At the time when the third count was added to the complaint I suggested to counsel the possibility of amending their prayer for relief to meet this eventuality. This, after consideration, they declined to do and as the prayer stands, it must, for the reasons stated, be denied."

Before passing to the two questions concerning these transfers of stock which are fairly within the record, we feel obliged to point out the inartificiality of this judgment, containing, as it does, the claims of the parties and argument of counsel, and having been drafted without regard to precedent and the manner in which equitable judgments should be drafted. It is very apparent the trial court considered these transfers a sale and refused to render a judgment upon this basis because the prayers for relief did not pray for a judgment declaring this transaction a sale and ordering the defendants to pay plaintiffs the consideration agreed upon at the time of the contract of sale. The trial court found the transfers were not a gift. In overruling plaintiffs' claim the court held that the transaction was not a *nudum pactum* from the failure of the minds of the parties to meet. The contract of transfer was in regular form a contract of sale. It recites the desire of Arthur M. Cottrell to acquire title to the shares of this stock at the par value of these shares. It then states the agreement, that for a consideration, both good and valuable, the receipt of which is acknowledged, Charles and Edgar agree to sell, assign, transfer and deliver to Arthur these shares, to be delivered within ten days after the execution of the agreement. In the presence of this agreement it is

Cottrell v. Cottrell.

not to be wondered that the trial court was of the opinion that the intention to make this sale as expressed in the contract must control regardless of any secret thoughts which the defendants might have entertained, and that the contract indicates a sale. It could not be otherwise construed. The parties to it were experienced business men. The subject-matter was large in amount, and the sellers were careful to provide that they should have the first opportunity to buy the stock in case the purchaser should determine to sell, or should die. By the will of Calvert B. Cottrell, the three sons, to whom was given all of the stock of this company, were charged with the payment of an amount of money to his son Arthur and his daughter Harriet, to adequately compensate them for the gift of his stock to the three other sons. Recognizing this obligation, interest on this sum has been paid from that day to this, and some payments made on the principal. Why these two brothers should make a gift of these shares of stock, when they were bound to pay in money this charge upon their legacies, does not appear in the finding. The contract in question on its face bears witness that it was drafted by an experienced draftsman. It seems incredible that he would not have provided for the release of this charge upon the legacies to Charles and Edgar if his attention had been directed to the fact that the transfers were a gift, and it also seems impossible that the experienced draftsman would have drawn a contract of sale if the transaction was merely a gift.

We are of the opinion that the finding, interpreted in the light of the memorandum of decision and the judgment, compels the conclusion that this contract and these transfers were a sale and were so intended. The finding should have contained a clear expression of the trial court upon this point, since it was un-

doubtedly that which it reached; as it stands, taken in connection with the judgment, no conclusion other than that these transfers were a sale is legally permissible.

We come next to the question which prevented the trial court from rendering the judgment it desired; its interpretation that the prayers for relief did not permit it. Let us examine the record upon this point. Arthur claims to be the owner of these shares of stock, and Charles recognizes and acquiesces in this claim. These defendants, as executors, now claim the right to deliver the certificates of stock to Arthur. Under the third count plaintiffs pray that defendants be enjoined from transferring and delivering these stock certificates. Arthur has not paid a dollar for the stock sold to him under this contract. He is before a court of equity. Should these certificates of stock be delivered by these executors to this purchaser, who claims to own the stock by right of a gift, and these plaintiffs be forced to pursue in another action their effort to compel this purchaser to pay the moneys he promised to pay for this stock and which for years he has refused to fulfil, or should equity prevent the transfers until the purchaser has paid the purchase price? Surely this prayer for relief is broad enough to permit the long arm of equity to require the purchaser of this stock to pay what he agreed to for the stock before these defendants should be permitted to make the transfers. The prayer for relief may by its express terms enjoin these defendants from making these transfers; it should not make the restraint so broad, but should condition it to the situation presented by the facts. When the stock has been paid for these executors should transfer it, but the reasonable time and terms of payment should be determined hereafter by the Superior Court before such payment is required

to be made. Interest will run upon the purchase price, $100,000, from the date of the contract of sale, May 23d, 1921. If this construction of prayer eight were not permissible, prayer seven, "for such . . . relief in law or equity as the plaintiff may be entitled to," would abundantly support the relief which we think is afforded under prayer eight.

The prayer for general relief was inserted to aid and supplement the prayers for special relief by expanding them to include such other and further relief as the court may from the nature of the case deem proper. Any relief can be granted under the general prayer which is consistent with the case stated in the complaint and is supported by the proof "provided the defendant will not be surprised or prejudiced thereby." 1 Whitehouse, Equity Practice (1915 Ed.) § 119, p. 223.

In *Hart* v. *Granger,* 1 Conn. 154, 167, we held: "The only objection made to the jurisdiction of the court was, that there was in the bill no specific prayer respecting the land, but that it was merely for a sum of money, which of itself would not give jurisdiction, circumstanced as the parties were. But this objection will vanish, if it be an established principle, that under the general prayer to give such relief as is proper a specific execution of the contract as to the land can be decreed. And that this is an established principle, is a matter so plain, and occurs, and is acknowledged, so often, in daily practice, that I shall adduce no arguments to prove it."

In *Chiarelli* v. *Pentino,* 100 Conn. 686, 690, 124 Atl. 806, the specific prayers sought to impress a trust upon real estate, of which the defendant held the title, and also sought an accounting. We held (p. 689): "The plaintiffs did not specifically pray for a reconveyance, but their general prayer for equitable relief would

include this." Our own authorities thus support the principle which we have stated to be the law. *Chiarelli* v. *Pentino, supra,* is an application of § 6 of our Practice Act, now General Statutes, § 5636. The majority of decisions of our State and Federal courts support this principle.

In *Burleigh* v. *White,* 70 Me. 130, 136, Judge Peters says: "Having the bill in our hands, under the prayer for general relief, all necessary relief can be afforded. This is in accordance with the general rules laid down by all authors on the subject of equity." In an action by *cestuis que trustent* to set aside a trustee's sale, the court may, in setting aside the sale, order an accounting under the general prayer for relief, though there be no specific prayer for an accounting. *Beall* v. *Dingman,* 227 Ill. 294, 302, 81 N. E. 366. In *Junior Order B. & L. Asso.* v. *Sharpe,* 63 N. J. Eq. 500, 506, 52 Atl. 832, the court states the rule to be: "If the complainant, on the facts stated in the bill, is entitled to any equitable relief whatever, and there is a prayer for general relief, this may be granted, even if the special relief claimed be not warranted by the facts, or if he mistakes the principles of equity upon which his right to relief is founded."

Again, we find the rule stated that "a complainant is entitled, under the general prayer, to any relief put in issue by the facts alleged and not inconsistent with the special prayers or the general object of the bill." *Chambers* v. *Kunzman,* 59 N. J. Eq. 433, 439, 45 Atl. 599. Mr. Justice Gray stated this as the rule: "A prayer for general relief . . . is sufficient to enable a court of equity to decree such relief as the facts stated in the bill justify." *Jones* v. *Van Doren,* 130 U. S. 684, 692, 9 Sup. Ct. 685. See also *Mobile Land Imp. Co.* v. *Gass,* 142 Ala. 520, 531, 39 So. 229; *Hill* v.

*Beach,* 12 N. J. Eq. 31; *Annin* v. *Annin,* 24 N. J. Eq. 184.

The trial court was in error in concluding that, in the absence of a specific prayer for relief, no remedy could be afforded the plaintiffs. There was the remedy which we have pointed out under prayer for relief eight; and if that were not among the prayers for relief, the general prayer for relief would support a like remedy. The relief which we hold to be fairly within the prayer for relief eight also falls under prayer for relief seven, since it is consistent with the case stated in the complaint and is supported by the facts found.

We cannot pass upon the defendants' so-called bill of exceptions. It does not come within the matters for review of which a bill of exceptions might be filed by the appellee. General Statutes, § 5839. "Its purpose is not to obtain a review of errors committed in the progress of the cause as upon appeal, but to provide by way of anticipation for the conduct of a new trial which shall not fail by reason of doubtful questions upon which the presiding judge may be required to act." *State* v. *Thresher,* 77 Conn. 70, 77, 58 Atl. 460.

There is error; the judgment is set aside, and the Superior Court directed, after hearing had upon the terms of payment, to enter its judgment for the plaintiffs in accordance with this opinion.

In this opinion the other judges concurred.