ISABELLE MASLANKA v. HENRY MASLANKA

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 80069

Memorandum filed March 1, 1949.

*Irving Joseph,* of Bristol, for the Plaintiff.

*James T. Mather,* of Bristol, for the Defendant.

ALCORN, J. On June 18, 1931, the defendant was an inmate of the Cheshire Reformatory and on that date the plaintiff went to Cheshire and they were married. At that time the plaintiff was not working but she began to work about six months after the marriage. In 1933 the defendant was released and secured employment two days a week, for which he received a weekly wage of eleven or twelve dollars. After two months he secured full-time employment at $28 per week, which was increased to $39 per week in 1938 or 1939. The plaintiff, meanwhile, continued to work and their joint earnings supported them under the plaintiff's management. They appear to have been thrifty and about October, 1938, they opened a joint savings account with a deposit of $30. They continued to work and save, and in September, 1939, they purchased a

package store and opened it in the plaintiff's name with the use of moneys from the joint savings account. The plaintiff operated the package store from 8:30 in the morning until 11 at night, while the defendant continued his regular work as a linotype operator. The package store was successful and the profits from it, together with the defendant's earnings, were used for family expenses and any excess was put in the joint savings account. The plaintiff managed the family finances. The savings account was kept in the joint names until 1940, when by mutual consent it was put in the plaintiff's name for greater convenience in the conduct of the store and the family finances.

In 1940 the parties discussed the purchase of a piece of property at 31 Main Street in Bristol, with the idea that each would operate a store on the premises. Finally, in July, 1941, the property was purchased for $10,000 subject to a bank mortgage of $7,500. The property was not worth more than this price. Title was taken in the defendant's name by mutual consent and because the package store business was being operated in the plaintiff's name. The sum of $2,500, being the equity, was paid from the savings account standing in the plaintiff's name. Thereafter, payments were made on the mortgage from the joint family resources, of which the package store earning formed a substantial but not definitely ascertained part, and the mortgage was fully paid in 1943.

The parties continued to prosper, and, in April, 1944, $3500 was withdrawn from the savings account with which an auto parts store was purchased which the defendant opened and began to operate in his name in May, 1944, next door to the package store. From then until June, 1945, the plaintiff supervised the operation of both stores during the mornings, while the defendant continued his original employment. The defendant, however, came to the store from 12 noon to 1 to relieve the plaintiff for lunch and returned at 4, when his regular employment ended, to assist with the work at the stores. Beginning about June, 1945, however, the defendant ceased his former employment and undertook full-time management of the auto parts store while the plaintiff continued to run the package store. The earnings were indiscriminately mingled and used to pay household and living expenses, taxes, incidentals, and the expenses of operating both stores. The defendant left the bookkeeping and the payment of the bills to the plaintiff.

Whether the parties were unable to stand prosperity or whether other causes arose does not appear but, in any event, all their thrift, hard work, and mutual endeavor ended in domestic discord, and in November, 1945, the plaintiff separated from the defendant and they have lived apart since. Complaint and cross-complaint for divorce were dismissed. Because of their falling out, they agreed in December, 1945, to separate the management of the two stores and the plaintiff released any claim to the auto parts store while the defendant released any claim to the package store. At the time the plaintiff had about $2400 in a bank account and there were outstanding package store bills amounting to about $1300. It was agreed that the plaintiff retain the $2400 bank account to offset the bills. The property at 31 Main Street was not included in this transaction. Over the years, however, the parties had accumulated war savings bonds of a maturity value of $8400 which stood in their joint names. At the time of dividing their interest in the stores, they also made an equal division of the war bonds and each took possession of his or her half. Thereafter, however, the defendant appropriated the plaintiff's half of the bonds and has not returned them to her.

Subsequently, the plaintiff demanded a division of the real estate at 31 Main Street, but the defendant refused. The property at 31 Main Street, at the time of purchase, was a four-family house of twenty rooms, with four garages in the rear. After its purchase the parties occupied one apartment and the other three were rented for a total of about $100 a month. This the defendant collected and did not account for to the plaintiff, although she assumes that he used it for the general family expense because the plaintiff did not pay all of the family bills.

Until discord ripened into separation, the parties worked for their mutual advantage and obvious profit with no thought of any formal agreement concerning their affairs but with a mutual understanding that everything was, as they put it, "fifty-fifty" for their mutual advantage. Since the break in their relations the plaintiff has sold the package store for $7500 and the defendant has sold the auto parts store for a net profit of $12,000. The defendant has meantime undertaken a renovation of the property at 31 Main Street and has remodeled it into eleven three-room apartments and as a result its present

value is $37,000. In the course of the renovation the defendant has spent $21,436.69 and still owes about $4300. The funds already spent for the renovation have come from the proceeds of the sale of the auto appliance store, a sale of the plaintiff's as well as the defendant's share of the war savings bonds, for about $7000, and the rent received from the property.

Clearly these parties, starting with nothing, pooled first their efforts and later the accumulation from their thrift and mutual endeavors for their common benefit. The misfortune is that they could not continue. There was no express agreement between them, and no need for one, as to any partnership or sharing on any business basis, but their activity was in every sense and beyond any question a joint enterprise for their mutual benefit. Each was a working part of the combination and if any lion's share of the credit for results is to go to either it belongs to the plaintiff wife. A continuation of the joint enterprise having been rendered impracticable by the domestic disagreement and separation, the parties are entitled to an equal division of the results of their joint efforts. *Dolan* v. *Dolan,* 107 Conn. 342, 350. The accomplishment of that result presents some difficulty upon the pleadings as they stand. The complaint seeks a conveyance of a half interest in the realty at 31 Main Street, standing in the defendant's name, and a conveyance of one-half of the war savings bonds or, in the alternative, $10,000 damages. The fact that this property was purchased with joint funds would, without more, result in the defendant holding a half interest in it in trust for the benefit of the plaintiff. *Vaszauskas* v. *Vaszauskas,* 115 Conn. 418, 427. It must be recognized, however, that the real estate is today worth almost four times its purchase value, and that part of this enhancement is due to the use of proceeds from the sale of the plaintiff's share of the war savings bonds. The enhanced value may be also partly due to the defendant's personal time and effort expended on the real estate since the parties separated in November, 1945, and to personal indebtedness which he has incurred, in none of which the plaintiff has shared. Consequently, to declare the plaintiff to be a half owner in the property at its present value might unjustly enrich her. On the other hand, to decree her a half interest at its purchase value might be equally inequitable by failing to take account of the enhanced value due to the use of joint funds. The situation calls for an accounting to determine the fair result of the joint adventure.

The tangible results of the joint enterprise were the package store, the auto parts store, the war savings bonds, the bank account in plaintiff's name, and the real estate at 31 Main Street, Bristol, in defendant's name. The parties have seen fit to make their own division of all but the last item—the real estate in defendant's name. The plaintiff has had the benefit of the agreement she made as to this division except for her share of the war savings bonds.

In view of the division of the stores it is equitable to consider that the $12,000 profit made by the defendant from the sale of the auto parts store belonged to him. Consequently the use of this amount to enhance the value of 31 Main Street does not represent the use of joint funds. Likewise the defendant's personal time and labor on the property since November 25, 1945, the date of the separation, and any personal indebtedness incurred for remodeling expenses since that date are not part of the joint enterprise. Neither are they to be presumed a gift to the plaintiff to enhance the value of her interest in the real estate because it is clear that after the quarrel and separation he had no intention to make such a gift. *Fox* v. *Shanley,* 94 Conn. 350, 357. The proceeds of the war savings bonds and the rentals from 31 Main Street, however, represented joint funds which went to help produce the present value of 31 Main Street.

The conclusion is that before a division is made the defendant should be permitted to show the value of his personal time, effort, resources, and obligations incurred with respect to the 31 Main Street property in order that proper credit may be allowed him therefor. The situation is as though a bank account had existed at the time of the separation, in which the defendant had subsequently made deposits of his own. In such a situation it would seem that the deposits made after the joint enterprise ended should be deducted before a division were made.

An accounting is a prerequisite to accomplish the purpose indicated: The complaint seeks neither an accounting nor general equitable relief, and the relief which ought to be granted therefore is not reasonably within the scope of the pleadings. *Spitz* v. *Abrams,* 128 Conn. 121, 123; *Cottrell* v. *Cottrell,* 106 Conn. 411, 419-422. The parties have been fully heard concerning the facts necessary to a determination of the propriety of an accounting. "To compel the plaintiff to bring a new action would appear to be idle and uncalled for, and quite

out of accord with the spirit of our practice, which favors as far as possible the litigation of related controversies in one action." *Preston* v. *Preston,* 102 Conn. 96, 122.

The plaintiff's complaint should be amended to demand an accounting, and if such an amendment is filed within one week from the filing date of this memorandum an interlocutory decree will be entered in the plaintiff's favor that the defendant account as herein set forth.