SPANGLER *v.* SAGINAW VALLEY TRACTION CO.

1. CARRIERS — STREET RAILROADS — SETTING DOWN PASSENGERS — DUTY OF CARRIER.

A street is not a passenger station, for the safety of which a street-railway company is responsible; ordinarily, a passenger, having safely alighted from a street car, becomes at once a traveler upon the highway, and his duty and the duty of others towards him have no relation to the reciprocal duties which a moment before existed between the carrier and himself.[1]

2. SAME—OBSTRUCTED STREET.

It is the duty of a street-railroad carrier to exercise proper care to see that the place of alighting is safe and not to stop its car for alighting passengers at a place where it is known to be unsafe.

3. SAME—PERSONAL INJURIES—NEGLIGENCE—QUESTION FOR JURY.

In an action by a passenger against a street-railroad company for personal injuries received by falling into a paving excavation between defendant's tracks immediately after alighting, the situation having been created by defendant a few hours before the injury, evidence examined, and *held*, that whether the night was dark and the obstructions and the single red light placed in the vicinity were calculated to warn a prudent person of the situation, and whether plaintiff exercised proper care, were questions of fact properly submitted to the jury.

4. SAME—EVIDENCE—SUFFICIENCY.

In an action by a passenger against a street-railroad company for personal injuries received by falling into a paving excavation between defendant's tracks immediately after alighting, the situation having been created by defendant a few hours before the injury, evidence examined, and *held*, to warrant a finding that it was negligence on the part of the carrier to stop its car at the place it did stop it and invite plaintiff to alight there without in some suitable way informing her of the conditions.

Error to Saginaw; Gage (Chauncey H.), J. Submit-

[1] As to termination of passenger's relation, as such, upon reaching destination, see note to *Glenn* v. *Lake Erie & W. R. Co.* (Ind.), 2 L. R. A. (N. S.) 873.

ted January 24, 1908.   (Docket No. 155.)   Decided May 1, 1908.

Case by Sarah Spangler against the Saginaw Valley Traction Company for personal injuries.   There was judgment for plaintiff, and defendant brings error.   Affirmed.

*Weadock & Duffy*, for appellant.

*Eugene Wilber* and *Fred L. Eaton*, for appellee.

Defendant operates a street railway on Warren avenue in Saginaw.   On the evening of August 17, 1906, plaintiff alighted from a south-bound car at the intersection of Warren avenue and Hoyt street, on the south side of Hoyt and west side of the car, intending to proceed to the east across Warren avenue to her home on the south side of Hoyt street.   During that day, in preparing to repave the street between the rails and for a short distance outside the rails, agreeably with the demand of the city and its relations therewith, defendant's contractor had removed the cedar blocks of the old pavement from the south line of the asphalt roadway on Hoyt street southward for several hundred feet.   The excavation or opening thus made was at least seven and perhaps in places outside the rails a greater number of inches in depth.   The car on which plaintiff rode having proceeded, she stepped into the excavation, of which she had no knowledge, fell down and broke her leg.   She recovered a verdict and judgment against the company, the theory of the case set out in her declaration being that defendant owed a duty to her as passenger to stop its cars where she could alight in safety and safely cross the street, and, if it stopped them where the excavation existed, to light the place so that the danger could be seen and avoided or to warn her of the dangerous condition.   It is averred that it stopped the car at a point where, when she alighted, she was opposite and near the excavation, that no light was set at or near the place, no signal of danger given, and that she was not

given any warning of the dangerous character of the street. It was the theory of the defendant (I quote from the brief):

"That so far as the plaintiff was concerned, it had discharged its full duty as a common carrier, and she had safely alighted from the car, and the car had proceeded upon its way; that it had let the contract for the pavement of the right of way, and the contractor had provided a proper light to warn persons using the street of the danger, and that plaintiff heedlessly, without using any care, caution or observation, walked into the excavation, and was injured; that the work was a necessary work and was done in the usual and ordinary manner."

Certain of defendant's requests to charge were refused and it is upon such refusal and upon the instructions given to the jury that the assignments of error relied upon are based. The court instructed the jury:

"It was the duty of the company to provide a safe place to alight. Now you are not to consider that the place was safe simply because a person alighted from the car and reached the ground and stood there without injury. If there was in the vicinity of the point and so close to the point where she was required to alight by the street-car company, so close as this excavation was, it is a question for you to consider, gentlemen of the jury, as a question of fact, whether that was a safe place to alight. Because we all understand that when a party alights from a car they do not maintain a position upon the pavement of a stationary character; they go somewhere. If this excavation 14 inches from the car, was so near to the point of alighting as to render it a dangerous place, in your judgment, to a person getting off of the car at that point, then the railway company did not perform their duty to this plaintiff and were guilty of negligence in requiring her to alight at such a point; and it is a question of fact for you to find from the nature of the excavation whether it was a safe place or not for alighting. If it was not a safe place, it is the duty of the company to warn the passenger of the fact of the existence of this unsafe condition of the track, between the tracks, and for this space in front of the. tracks. Now that warning might be by an actual statement on the part of the conductor that

there was something near the point where he required her to alight, and the company required her to alight, where they stopped—there is no question about that. It was the duty of the company to provide some way by which a person might be warned of the danger. It might have been done by the conductor telling her of the fact. It might be done by providing a barrier or safeguard or a light sufficient, of a character that would indicate danger; that would warn a person that they must not step in that direction, that is towards the excavation, but go in some other direction.

"Although the street-car company operated its track upon Warren street, it did not change the nature of the highway. The street is still a public highway. The street-car company simply had a right to pass along the highway on stationary tracks, and by a contract given to them; it is still a public highway. But in that part they occupy there it has certain other duties required of them by their franchise apparently, and among them is this matter of the paving between the tracks and on each side of the tracks. They had a right to do that paving, that is true; but because they were obliged to do the paving under the franchise, it did not relieve them of the obligation of providing a safe place to alight; and if, in the duty of making this pavement, rebuilding the pavement, or putting in a new pavement, it rendered the alighting of passengers within the length of the excavation unsafe, then it became the duty of the street-car company, or the defendant in this case, to warn the passengers of the danger.

"It is a question of fact for you to consider whether the light placed on the northeast corner of Hoyt and Warren was of such strength, or was of such character, or was at such a point, that it would naturally warn a person in getting off a car on the west side of the track at the point where this lady was required to alight from the car. That is, if it was such a character and at such a point that it would indicate to the person alighting from the car that there was danger close by, and there was danger where they were then if they moved in a direction eastward, it might be a sufficient warning, but that is a question of fact for the jury to decide. Or whether there was a warning of danger at some other point, or some more remote point, than the place where she did alight. Of course, there is evidence in this case as to the character of this light, and the evidence is not alike; but the location

of the light there did not seem to be any great difficulty. And then in determining that question, about the light, you will take into consideration the darkness of the night, whether dark or light, or daylight; and you must also take into consideration the obstructions in and about there to a person seeing a light of that character, in the way of trees, foliage, and shrubbery; and in taking into consideration whether the light was sufficient to warn a person getting off from the car, you may take into consideration the condition of the persons when they got off the car; and it is a matter of common knowledge that a person sitting in a lighted car, it may take a moment or two before in the darker point their eyesight would be sufficiently bright you might say to see such a light.

"The plaintiff had a right to cross that track. She had a right to go home that way. A person has a right to cross a street anywhere they see fit, so far as the actual right of crossing there was concerned. She was under no obligation to go around on Hoyt street and cross that way; she was under no obligation even to go to the sidewalk. She had a right to cross unless of course she was warned and saw the warning; in other words these 'short cuts,' as we sometimes hear them called, are a perfectly proper transaction, ordinarily considered; but persons crossing any street are obliged to exercise a certain care. She was obliged to exercise that care that an ordinarily prudent person would exercise at that time of night in crossing that street, and that is all. If she did, why she did not by her action contribute to the injury. * * *

"When you consider what character of lights the defendant ought to have had at this point and also what care the plaintiff should have exercised at that point, the character of the night in question and also whether that particular point on the street was more shaded or darker than other portions of the street must be taken into consideration. It was the duty of the defendant, if they used a darker point where she got off than it was at other points on the street, to make that light or warning sufficient that it would attract her attention at that point and that there was danger at that point.

"And also if it was a very dark and shaded point there, then the care required of a person crossing the street was increased of course by darkness. In other words the darkness increased the care on her part and the duty on the part of the company.

"So far as the actual lighting of the street is concerned, that is putting electric lights or gas lamps or any other method of making the street light, the defendant company were under no obligation to do that. That is electric lights and other methods of lighting the streets, that is done by the city. Streets may be lighted or not, as the city authorizes them or not. But this particular light, the warning of danger was a duty on the part of the defendant company."

These excerpts from the charge sufficiently present the theory of the trial judge.

OSTRANDER, J. (*after stating the facts*). As the contention of plaintiff in error is understood, it is that the duty of the railway company, the passenger having alighted safely, was a duty to be measured without reference to the relation of carrier and passenger; that it owed to plaintiff, when she was injured, no other or different duty than if she had been a pedestrian who was attempting to cross the street at the same place.

The rule that the relation of carrier and passenger does not cease at the moment the passenger alights from the carrier's vehicle, at the point of destination, but continues until the passenger has had reasonable time to leave the carrier's premises, is qualified in its application to passengers using surface street-railroad vehicles. A street is not a passenger station, for the safety of which a street-railway company is responsible. Ordinarily, a passenger, having safely alighted from a street car, becomes at once a traveler upon the highway, and his duty and the duty of others towards him have no relation to the reciprocal duties which a moment before existed between the carrier and himself. *Creamer* v. *Railway Co.*, 156 Mass. 320 (16 L. R. A. 490); *Bigelow* v. *Railway Co.*, 161 Mass. 393; *Conway* v. *Railroad Co.*, 87 Me. 283, 90 Me. 199; *Platt* v. *Railroad Co.*, 2 Hun (N. Y.), 124. But as a general rule it is the duty of the street-railroad carrier to at least exercise proper care to see that the place of alighting is safe—not to stop a car for alighting passengers at a

place known to be unsafe.   Nellis on Street Surface Railroads, p. 485; *Richmond City R. Co.* v. *Scott*, 86 Va. 902; *MacDonald* v. *Transit Co.*, 108 Mo. App. 374; *West Chicago St. R. Co.* v. *Cahill*, 64 Ill. App. 539, 165 Ill. 496; *Stewart* v. *Railway Co.*, 78 Minn. 85; *Fort Wayne Traction Co.* v. *Morvilius*, 31 Ind. App. 464; *Citizens' St. R. Co.* v. *Twiname*, 111 Ind. 587; *Henry* v. *Railway Co.*, 24 Wash. 246; *Bass* v. *Railway*, 70 N. H. 170; *Mobile Light & R. Co.* v. *Walsh*, 146 Ala. 295; *Maverick* v. *Railroad Co.*, 36 N. Y. 378; *Wolf* v. *Railroad Co.*, 67 App. Div. (N. Y.) 605; and it would be a narrow application of the rule to hold that the carrier's duty was in all cases performed if a passenger reached and stood upon the surface of the street in safety. If a passenger alighted in the night, in a dark place, at a point where a step made in any direction would be into an excavation, made by the carrier, in a street, the surface of which had been theretofore smooth and comparatively level, the existence of the excavation being unknown to the passenger, it would be doing violence to terms to say that the car was stopped and the passenger invited to alight at a proper place, or that the passenger had safely alighted.   In the case at bar, the plaintiff had been absent from the city for some days.   She was ignorant of the situation at the place where she alighted.   The situation was a dangerous one and had been created by defendant a few hours before the injury was received.   Whether the night was dark and the obstructions and the single red light placed in the vicinity were calculated to warn a prudent person of the situation, and whether plaintiff exercised proper care, were questions of fact for the jury, and were submitted to them.   If plaintiff had been informed, she could easily have avoided the danger.   Without information, she was likely to pursue her way as she had been accustomed to do.   Her way led across the tracks of defendant and into the opening in the street.

We are of opinion that the evidence warranted a finding that it was negligence on the part of the carrier to

stop its car at the place it did stop it and invite plaintiff to alight there without in some suitable way informing her of the conditions. The charge of the court presented this theory and was, in the main, favorable to defendant.

The judgment is affirmed.

GRANT, C. J., and MONTGOMERY, HOOKER, and CARPENTER, JJ., concurred.