QUINN *v*. NEW YORK LIFE INSURANCE CO.

1. INSURANCE—ACCIDENT INSURANCE—RULE DETERMINING WHETHER INSURED A PASSENGER SAME AS WHERE CARRIER INVOLVED.

In an action against an insurance company on an accident policy providing for double indemnity in case of the death of insured caused by accident while traveling as. a passenger on a street car, the rule governing the question as to whether insured, who was killed while alighting from a street car or just after he had alighted, was still a passenger, *held*, not any different than it would be in an action by plaintiff against the street car company.

2. SAME—EVIDENCE—SUFFICIENCY—QUESTION FOR JURY.

Testimony justifying an inference that insured was struck while in the act of alighting from the street car, *held*, sufficient to sustain a judgment for plaintiff, based on the finding that he was still a passenger.

FELLOWS and CLARK, JJ., dissenting.

Error to Muskegon; Vanderwerp (John), J.    Submitted June 14, 1923.    (Docket No. 73.)    Decided October 26, 1923.    Rehearing denied January 7, 1924.

Assumpsit by Agnes M. Quinn against the New York Life Insurance Company on a policy of insurance.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Cross, Foote & Sessions*, for appellant.

*James E. Sullivan* (*Edward C. Farmer*, of counsel), for appellee.

BIRD, J.    Defendant insured the life of Leo J. Quinn, of Muskegon, in the sum of $4,000, and promised to pay the same to Agnes Quinn, his wife,

On scope and construction of provision in accident policy for indemnity in case of injury while riding in or on a public conveyance, see notes in 37 L. R. A. (N. S.) 618; L. R. A. 1915C, 456.

upon receipt of due proof of death, etc.   The policy then provides that:

"or eight thousand dollars, double the face of the policy, upon receipt of due proof that the death of the insured before the allowance of any disability benefit, was caused directly by accident while traveling as a passenger on a street car, railroad train, steamship licensed for regular transportation of passengers, or other public conveyance operated by a common carrier."

On July 5, 1920, Mr. Quinn boarded a crowded street car going east on Lake street to ride a few blocks to his home.   The train consisted of a motor car and trailer.   He rode on the front step of the motor car near the motorman.   He indicated to the motorman that he would like to get off at Addison street.   When the train reached Addison street it slowed down, and just before it stopped he stepped off, or while stepping off, a taxicab going in the same direction struck and killed him instantly.   Upon presentation of proofs of death defendant paid the $4,000 insurance to plaintiff, but refused to pay the double insurance because it asserted the insured was killed by an automobile accident and not while he was traveling as a passenger on a street car.   On the trial defendant had verdict by direction of the court.   This judgment was set aside in this court on a question of practice (218 Mich. 650).   The case was retried and resulted in a verdict for plaintiff for the full amount of her claim.

The trial court instructed the jury:

"I charge you, gentlemen, that if Leo J. Quinn at the time he was struck by the taxicab, had already released his hand from the street car and stepped away from it, but had not reached the ground or pavement with his foot or feet, or if he, when he was struck, had released his hand from the street car and had already reached the pavement or ground but was still being carried towards the curb by the momentum

of his stepping or jumping off and away from the street car, even if he had taken one or more steps after reaching the pavement or ground, then he was, within the meaning of the policy of insurance, still traveling as a passenger upon the street car and the defendant is liable in this case.

"On the other hand, gentlemen, if Mr. Quinn had, at the time he was struck by the taxi, safely alighted from the street car, having released his hold of the hand rail and had reached the pavement or ground and was walking or running towards the curb as a man ordinarily walks or runs, of his own volition, and was not at the time he was struck, being carried towards the curb by the momentum of his stepping or jumping off the street car, then he was not, within the meaning of the policy of insurance, traveling as a passenger on the street car, and the plaintiff in that event cannot recover in this case."

These paragraphs raise the important and controlling question in the case.  Defendant's position, as I understand, is:

(a) That a verdict should have been directed in its behalf because the proofs did not show that Quinn was traveling as a passenger on the street car when he met his death.

(b) Defendant is also at variance with the two paragraphs of the charge quoted because it insists the proofs show that Quinn had left the car, reached the pavement and completely disconnected himself from the car.

(c) It is further contended that as between plaintiff and the defendant a different rule should be applied than between plaintiff and the street car company on the question whether the insured was a passenger at the moment he was struck.

1. Considering the last question, we are unable to see why any distinction should be made between the insurance company as a defendant and the street car company.  At the time the provision "while traveling as a passenger on a street car," etc., was adopted by defendant and made a part of its contract, that phrase had a well-understood meaning in the law, and it is

reasonable to suppose that the meaning given to it by the courts was well understood and considered by defendant before making it a part of its double liability, and it was well known by both parties when the contract was made that should the parties afterwards disagree upon the question of liability the courts would probably give the language the same construction they had given it in cases where transportation companies were defendants. We cannot agree with defendant in this suggestion.

2. With this question eliminated the important question gets around to this: Was Quinn a passenger on the street car when struck by the auto? In discussing the question as to when the relation of carrier and passenger on street cars terminates it is said:

"The general rule just considered that in the case of a carrier having exclusive control or occupation of its tracks and stations, one traveling may still retain the status of a passenger after alighting from the carrier's vehicle, is from the nature of things not applicable to carriers not so situated, as for instance in the case of persons traveling on street railway cars. While a person attempting to alight from a street car remains a passenger until he has accomplished the act of alighting in safety, and the carrier owes to the passenger attempting to alight that very high degree of care and attention which the law puts upon it generally to the end of promoting the safety of its passengers, and will be liable for negligent injury to the passenger while so alighting, it is the generally accepted view that one who has alighted from a street car and is in safety upon the highway is no longer a passenger, but is thenceforth a traveler upon the highway, and subject to all the duties and obligations imposed upon such travelers, and the railway company is not responsible to him as a carrier for the condition of the street, or for his safe passage from the car to the sidewalk." 4 R. C. L. p. 1047, and cases cited.

This rule is followed in Michigan. *Spangler* v.

*Traction Co.*, 152 Mich. 405; *Wilson* v. *Railway*, 167 Mich. 107; *Fuller* v. *Railway*, 176 Mich. 135.

In the last case cited it was said, quoting from *Spangler* v. *Traction Co., supra:*

"Ordinarily, a passenger, having safely alighted from a street car, becomes at once a traveler upon the highway, and his duty and the duty of others towards him have no relation to the reciprocal duties which a moment before existed between the carrier and himself. *Creamer* v. *Railway Co.*, 156 Mass. 320 (31 N. E. 391, 16 L. R. A. 490, 32 Am. St. Rep. 456); *Bigelow* v. *Railway Co.*, 161 Mass. 393 (37 N. E. 367); *Conway* v. *Railroad Co.*, 87 Me. 283 (32 Atl. 901); *Id.*, 90 Me. 199 (38 Atl. 110); *Platt* v. *Railroad Co.*, 2 Hun (N. Y.), 124. But as a general rule it is the duty of the street-railroad carrier to at least exercise proper care to see that the place of alighting is safe—not to stop a car for alighting passengers at a place known to be unsafe."

The question, therefore, is whether Mr. Quinn had safely alighted on the pavement at the moment he was struck by the taxicab. If he had, he was a traveler upon the highway and no longer a passenger. If he were in the act of alighting, or had not safely alighted from the car when he was struck by the automobile, he was a passenger within the meaning of this rule. For the purpose of determining this question we have carefully read the testimony of the eyewitnesses of the accident. Some of these witnesses were passengers on the train. Others were passengers in the taxicab, and some viewed it from the side of the street. It appears to us that the most favorable testimony for the plaintiff is the following:

Mr. Phelps testified:

"*Q.* Where was this man standing on the street car, Mr. Phelps, what portion of the car?

"*A.* He was standing on the front step, grasped hold of the hand bar there, of the motor car, almost right in front of me.

"Q. At what particular time did this taxicab strike him, if you can remember?

"A. It looked to me, the way my eyes carried me to the sight, that he was struck at the time that he was leaving the car."

Mr. White testified:

"Q. Did you see him struck by this machine, Mr. White?

"A. Yes, sir; I did.

"Q. When did it strike him?

"A. How is that?

"Q. When did it strike him?

"A. When?

"Q. Yes.

"A. Just as he got off the street car.

"Q. Were you looking out in that direction so that you could see the collision?

"A. It was right by me, I could not help but see it."

These two witnesses were in as favorable position to see Mr. Quinn when he left the car as any of the witnesses who testified. There were several other witnesses, and while they all thought that the machine was very close to Mr. Quinn when he left the street car, they differed slightly as to the distance. We are inclined to the opinion that the testimony of these two witnesses would justify an inference by the jury that Quinn was struck while in the act of alighting and before he had safely alighted on to the pavement.

Counsel, in a well-prepared brief, have argued the question from the standpoint of the following decisions: *Wallace* v. *Assurance Corp.*, 26 Ont. L. Rep. 10; *Creamer* v. *Railway Co.*, 156 Mass. 320; *Platt* v. *Railroad Co.*, 2 Hun (N. Y.), 124; *Anable* v. *Fidelity & Guaranty Co.*, 73 N. J. Law, 320 (63 Atl. 92); *Smith* v. *Railway Co.*, 29 Or. 539 (46 Pac. 136); *Turner* v. *Fidelity & Casualty Co.*, 274 Mo. 260 (202 S. W. 1078).

We think, on examination of those cases, it will be found that whenever any holding has been made in

them which appears to be at variance with the rule here announced, it is due to a difference in the wording of the contract.    As, for example, in the case of *Wallace* v. *Assurance Corp., supra,* which is much stressed in the brief, the wording of the policy was "while riding as a passenger in or upon a public conveyance."    An analysis of this language will show a restricted meaning as compared with the language used in this policy.

The case was very closely tried by both parties and very fairly and properly submitted to the jury.    We think the judgment should stand affirmed.

WIEST, C. J., and McDONALD, SHARPE, MOORE, and STEERE, JJ., concurred with BIRD, J.

FELLOWS, J. (*dissenting*).    I am persuaded by a reading of this record that the verdict rendered was against the overwhelming weight of the evidence and that a new trial should be granted for this reason.

CLARK, J., concurred with FELLOWS, J.