MARY CARTA *v.* PROVIDENCE WASHINGTON INDEMNITY COMPANY

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and COVELLO, Js.

Argued April 6—decided May 8, 1956

*Francis J. McCarthy,* with whom, on the brief, was *Warren Maxwell,* for the appellant (defendant).

*Charles G. Albom,* with whom were *George G. Whitehead* and, on the brief, *Philip Mancini, Jr.,* for the appellee (plaintiff).

O'SULLIVAN, J.  On June 10, 1951, the plaintiff's husband owned a Chevrolet coupe upon which a liability insurance policy issued by the defendant was in force.  An additional coverage clause in the policy obligated the defendant to pay, to the extent of $2000, for all reasonably necessary medical, surgical and hospital services rendered to a person who sustained bodily injury caused by accident "while in or upon, entering or alighting" from the coupe, if it was being used by the assured or with his permission.

During the period of these narrated events, the assured was managing a cafeteria located in a building set back from the public street.  There was a sharp upgrade from the street to the building, and the area was paved with a hard material.  On the morning of June 10, the plaintiff, at the request of her husband, drove the coupe to the cafeteria to take him home.  She ran the car up the incline in front of the cafeteria, parking almost parallel with the front of the building but with the front wheels of the car cramped to the left or downgrade.  The driver's side of the car was toward the street and was lower than the right side.  The plaintiff turned

off the motor and set the handbrake. She got out of the car on the driver's side. The door was very heavy and, since the left side of the car was lower than the right, she had to use all her strength in slamming the door closed. Having done this, she walked along the left side of the car until she reached its front end, then turned to her right to walk to the cafeteria. At that instant she observed that the car was rolling slowly toward her. She moved backward to avoid being injured by it and retreated down the incline and across the street, where she fell backward between the strands of a wire fence. At that point the rolling car struck her violently. As a result, she was severely injured and has incurred reasonably necessary hospital, medical and surgical expenses in excess of $2000. From the time the plaintiff closed the car door until she was injured was a matter of seconds. During that period she was at all times within a few inches of, but not in physical contact with, the car. On the basis of these facts, the court concluded that the plaintiff was injured while alighting from the car.

The policy provided coverage for the medical and kindred expenses incurred by a person accidentally injured "while in or upon, entering or alighting from" the Chevrolet coupe. These identical words, in a policy containing coverage comparable to that in the case at bar, have previously been considered by this court. *Ross* v. *Protective Indemnity Co.,* 135 Conn. 150, 62 A.2d 340. In that case, an automobile had been temporarily stopped, shortly after midnight, to allow the plaintiffs, who were riding in the rear seat, to answer a call of nature. Several minutes after leaving the car, the two were standing, conversing, behind it on the highway when they were struck and injured by another car pro-

ceeding in the same direction. We said (p. 153):
"The coverage is for any person in, upon, entering or
alighting from the automobile. The plaintiffs were
not within any reasonable meaning that can be
ascribed to these expressions. They were not in or
upon the automobile and they had not only alighted
but had gone to the rear of the car and were injured
several minutes later while standing there con-
versing. To hold that this was part of an act in
alighting or in entering the car would be, as said in
*Porto* v. *Metropolitan Life Ins. Co.* [120 Conn. 196,
200, 180 A. 289], 'so distorting [the words] as to ac-
cord a meaning other than that evidently intended
by the parties.' The trial court applied, as we must,
the common meaning of the expressions used in the
contract."

While continuing to confirm the result reached
in that case, we are unable to approve the last sen-
tence in the quotation if it is construed to intimate
that the words "alighting from the automobile" are
entirely free from ambiguity. Obviously, the words
cannot be extended so that the coverage will be for
something other than injuries accidentally received
while "alighting from" the vehicle. But there is
doubt, we believe, as to what acts were intended to
be within the process of alighting, and for this
reason we propose to clarify the coverage.

If we look to the dictionary, we find that the verb
"alight" is traceable to an Anglo-Saxon word mean-
ing "to render light, to remove a burden from." The
verb is then defined as "[t]o spring down, get down,
or descend, as . . . from a carriage." Webster's New
International Dictionary (2d Ed.). This leaves un-
determined, and hence uncertain, the point at which
the act of descending is completed. It might be
claimed, as indeed it is, that the point is reached

when both feet of the descender are on the ground and no contact by the hands or body is still had with the vehicle to support him in his descent.

Considering the purpose which the parties undoubtedly had in mind when contracting for the coverage, such a narrow concept of the word "alight" is not warranted. Further justification for refusing to accept this narrow concept lies in the fact that where, as here, two permissible constructions are possible, the court should adopt the one more favorable to the insured, or, as it is sometimes put, the one more unfavorable to the insurer. *O'Brien* v. *John Hancock Mutual Life Ins. Co.,* 143 Conn. 25, 29, 119 A.2d 329. The purpose of the coverage was to pay the bills incurred by a person injured as the result of an accident occurring while he was engaged in the variety of actions normally performed by one getting out of an automobile. The sources of such accidents are manifold. Not the least important of these sources is the passage of automobiles in the vicinity of the spot where the person is leaving the car. It is not reasonable to believe that the parties intended the coverage to end for one who gets both feet on the ground after emerging from the vehicle and, while then in the act, let us say, of closing the door, is struck by a passing automobile. Some reasonable length of time must be allowed a person, after getting out, for the completion of acts which can reasonably be expected from those in similar situations.

We should, however, make a limitation on the foregoing rather indefinite test. In a recent Maryland case, the court was confronted with the same words of coverage, but the concern was directed to the word "entering" instead of the words "alighting from." *Goodwin* v. *Lumbermens Mutual Casualty*

*Co.,* 199 Md. 121, 85 A.2d 759. The plaintiffs, who had attended a wedding, started back to their automobile to return home. When the accident occurred, all four plaintiffs were standing beside the car. One of them had unlocked and opened the front door and was reaching to unlock the rear door; another was holding the front door; a third was standing beside it; and the fourth had hold of the handle of the rear door. The court said (p. 131): "They had all completed their approach to the car, they were not coming up to it with the purpose of entering it, they had reached it, and they were actually engaged in the process of getting in. That is what Coverage D intended by 'entering.'"

Using a similar line of reasoning, we may express ourselves in a negative fashion by placing this limitation upon the test: A person is not in the process of alighting if, at the time, he has completed all acts normally performed by the average person in getting out of an automobile under similar conditions and if he has embarked upon a course of conduct entirely distinct from acts reasonably necessary to make an exit from the car. Such an act of embarking cannot logically be converted into an act of alighting. See *New Amsterdam Casualty Co.* v. *Fromer,* 75 A.2d 645, 648 (D.C. Mun. App.). On the basis of this limitation to the test, the court erred in holding that the plaintiff was entitled to recover because, when injured, she was alighting from the coupe.

The plaintiff, though successful in the trial court, filed an assignment of errors, as permitted by rule. Practice Book § 393. She thereby sought to correct the finding in such a manner as to establish that at least one of her hands was constantly on the coupe from the time she got out of it until she was in-

jured. Her strategy was to meet the possibility that this court might find error in the reason assigned by the trier for imposing liability on the defendant, and, through a corrected finding, to rely on those cases in other jurisdictions which hold that if a person who has gotten out of a car remains in physical contact with it until injured, he is deemed to be "upon" it and, hence, within the coverage of the policy. *Lokos* v. *New Amsterdam Casualty Co.,* 197 Misc. 40, 42, 93 N.Y.S.2d 825, aff'd, 197 Misc. 43, 96 N.Y.S.2d 153; *Madden* v. *Farm Bureau Mutual Automobile Ins. Co.,* 82 Ohio App. 111, 115, 79 N.E.2d 586; *Sherman* v. *New York Casualty Co.,* 78 R.I. 393, 397, 82 A.2d 839. The plaintiff could contend, were the finding corrected, that the situation was one where the judgment of the trier could be supported even though it had been based on the wrong ground. See *Doherty* v. *Connecticut Co.,* 133 Conn. 469, 476, 52 A.2d 436; Maltbie, Conn. App. Proc., p. 27, § 18. The finding, however, must stand, since the facts sought to be added were neither admitted nor undisputed. Practice Book § 397.

The plaintiff also filed a bill of exceptions by which she challenges the correctness of two rulings on evidence. Ordinarily, a bill of exceptions will not be examined when judgment is directed by this court. *Equitable Life Assurance Society* v. *Slade,* 122 Conn. 451, 463, 190 A. 616. The reason is that the purpose of the bill is to forestall error upon a new trial. *Cottrell* v. *Cottrell,* 106 Conn. 411, 422, 138 A. 458; Maltbie, op. cit., § 144. We are not, however, precluded from discussing the plaintiff's grievance as set forth in her bill, since it is somewhat connected with the assignment of errors she addressed to the finding. See *New Haven* v. *New Haven Water Co.,* 118 Conn. 389, 408, 172 A. 767.

The first ruling came about in this fashion: The plaintiff had testified on direct examination that at all times after getting out of the coupe she was in physical contact with it; that, while walking along the left side of it, she kept her hand on it for support; and that when she noticed the coupe was moving, she kept on trying to stop it with her hands until her injuries occurred. On cross-examination, the plaintiff identified her signature on a paper which was then offered as a statement previously made by her and which was contrary to her direct testimony as it related to her claimed physical contact with the coupe. She objected to the admission of the statement on the ground that no proper foundation had been laid for its reception. The court overruled the objection and admitted the paper in evidence, and the plaintiff duly excepted.

The plaintiff relied on General Statutes § 7870. That section provides that "[i]n any action to recover damages for personal injuries no written statement concerning the facts out of which the cause of action arose given by either party to the other, or to his agent, attorney or insurer, shall be admissible in evidence unless a copy thereof is retained by the party giving such statement or delivered to him at the time such statement was given or within thirty days thereafter." That the defendant had failed to prove, as a foundation for the admissibility of the plaintiff's statement, delivery of a copy was of no moment. The statute was inapplicable. It refers only to actions for the recovery of damages for personal injuries. The case at bar is to recover for breach of contract.

The other ruling on evidence of which the plaintiff complains was the refusal of the court to permit her to state on redirect examination that the testi-

mony she had given in a previous legal proceeding was the same as that given by her on direct examination in the trial of the case at bar. The plaintiff's purpose was to repair any damage to her credibility caused by the admission of her signed statement. If we assume that the plaintiff's request to rehabilitate her credibility falls within *Thomas* v. *Ganezer,* 137 Conn. 415, 417, 78 A.2d 539, permission to pursue it was within the court's discretion. Id., 420. There is nothing in the record to show that this discretion was abused.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.