**Benno P. LUDWIG, as Administrator of the Estate of Dean E. Cane, Deceased, Plaintiff-Appellant,**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellee.**

No. 75–1119.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1975.

Decided Oct. 17, 1975.
Rehearing and Rehearing En Banc Denied Jan. 23, 1976.

Edward L. Overtree, Ward A. Meythaler, Chicago, Ill., for plaintiff-appellant.

Owen Rall, Arthur C. Perivolidis, Chicago, Ill., for defendant-appellee.

Before PELL and SPRECHER, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge.

## THE APPEAL

The plaintiff-appellant Benno P. Ludwig, as Administrator of the Estate of Dean E. Cane, deceased, (hereinafter for convenience referred to as Cane) appeals from an adverse summary judgment denying his claim for double the amount of accidental death benefits under a life in-

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

surance policy (policy) issued by the defendant-appellee Massachusetts Mutual Life Insurance Company (hereinafter for convenience referred to as Insurer). We reverse and remand.

### FACTS

The undisputed facts are:

Cane then a resident of the state of Michigan and within that state applied to the Insurer for the policy on August 27, 1970, which policy was finally made, delivered, and became effective within Michigan on October 27, 1970. Thereafter and prior to July 26, 1972, Cane changed his residence to the state of Illinois and on that date made a change of beneficiary under the policy to his estate.

On the following August 2, while still a resident of Illinois and while the policy was in force and effect, Cane purchased a Burlington Northern Railroad commuter passenger ticket from Lisle, Illinois to Chicago, Illinois. He entered the railroad station in Lisle with the intention of boarding the appropriate train. As he attempted to cross the tracks to reach the proper boarding location for his eastbound commuter train, he was struck and killed by a westbound mail freight train proceeding through the station area. The commuter train had not yet arrived in the station at the time of the accident.

The Insurer had paid the estate the ordinary death benefits as provided in the policy and an additional $20,000 accidental death benefits, but had denied further liability for double benefits as provided in the accidental death benefit agreement provisions of the policy (hereinafter for convenience referred to as accidental provision). The accidental provision in its pertinent parts reads:

"If such death was the result of an injury sustained while the insured was a passenger in or upon a public conveyance then being operated by a common carrier to transport passengers for hire the amount which otherwise may be payable under this agreement [$20,000] will be doubled."

### PROCEEDINGS IN THE DISTRICT COURT

Cane asserted and the District Court agreed under the command of *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and *Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that the conflict of law doctrine and rule of the forum, the State of Illinois, determined whether the laws of the State of Illinois or the State of Michigan governed the rights and duties of the parties under the policy. Cane urged and the District Court concluded under the Illinois law that the interpretation and construction of the policy and its disputed accidental provision specifically must be governed by the laws of the place of making, namely: the State of Michigan, citing as authority *Gray v. Penn Mutual Life Insurance Co. of Philadelphia,* 5 Ill. App.2d 541, 126 N.E.2d 409 (1955), and *Hartliep Transit Co. v. Central Mut. Ins. Co.,* 288 Ill.App. 140, 5 N.E.2d 879 (1936). *Gray* 126 N.E.2d at 413, quoting *Hartliep,* states:

"The general rule is that a contract of insurance is deemed to be executed at the place where the last act is done which is necessary to make the same binding upon the parties [here the payment of the first premium] . . . Another general rule in the construction of contracts in matters affecting their validity and the rights of the parties is that they are *governed by the law of the place where the contract is made, at the time of the making thereof, and that such law is as much a part of the contract as if incorporated therein.* This rule prevails in the absence of any agreement of the parties to the contrary. *Gaston, Williams & Wigmore of Canada v. Warner,* 260 U.S. 201, 43 S.Ct. 18, 67 L.Ed. 210, 211 [1922]." (Italics supplied).

Cane claims recovery on the accidental provision under the holdings of the Supreme Court of Michigan as delineated in the following cases: *Quinn v. New York Life Ins. Co.,* 224 Mich. 641, 195

N.W. 427 (1923) [hereinafter cited as *Quinn*]; *Spangler v. Saginaw Valley Traction Co.*, 152 Mich. 405, 116 N.W. 373 (1908); *Rice v. Michigan Ry.*, 208 Mich. 123, 175 N.W. 454 (1919) [hereinafter cited as *Rice*]; *Moffit v. Grand Rapids Ry.*, 228 Mich. 349, 200 N.W. 274 (1924) [hereinafter cited as *Moffit*]; *Wilson v. Detroit United Ry.*, 167 Mich. 107, 132 N.W. 762 (1911) [hereinafter cited as *Wilson*]; and the federal case of *Preferred Acc. Ins. Co. of New York v. Ladd*, 299 F. 562 (6th Cir. 1924).

■ The Insurer, acknowledging the undisputed facts asserted, first, that under the rationale of *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970) [hereinafter cited as *Ingersoll*], as extended by *P. S. & E., Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125 (7th Cir. 1972) [hereinafter cited as *P. S. & E.*], the law of Illinois governs the rights and duties of the parties under the policy;[1] and secondly asserted non-liability under the laws of either state.

The District Court noted that the Michigan Supreme Court in *Quinn* had concluded that the word "on" appearing in the language of the accidental provision reading " 'while traveling as a passenger on a streetcar . . . .' did not necessarily mean physically 'on' the streetcar"; however, the District Court thought "[t]he basic problem in the instant case [to be] somewhat different," and "focus[ed] on the [accidental provision] words 'in or upon a public conveyance then being operated' " and concluded "that the use of the phrase 'in or upon' restricts the definition of 'public conveyance' [as used in the policy] to the actual car or boat used for moving the passengers. Thus where the passenger has not yet entered his train and is merely crossing the railroad tracks, he is not yet 'in or upon' a 'public conveyance'. This precludes the liability under the policy urged by [Cane]."

## DISCUSSION

We conclude that the District Court erred in concluding to give or brand the phrase "in or upon a public conveyance" with the narrow and restricted interpretation and meaning to be in or upon "the actual car or boat used for moving" a passenger and thereupon granting the summary judgment. The ruling is in direct conflict with the rationale and holding in *Quinn* and cannot stand.

The District Court ignored *Quinn's* expressly stated Michigan rule or test in determining the mutually intended meaning of the common carrier-passenger status ("while the insured was a passenger") required under the accidental provision and in lieu thereof concluded it was "obvious [that] the language in the [accidental provision] is somewhat different from that in the [*Quinn* policy and the] factual situation in the two cases are quite substantially different." The District Court having thus, we believe, mistakenly swept away *Quinn* "sought assistance from other courts which have faced similar problems to reach its decision," and ill-advisedly selected *London*

1. Insurer is content with the District Court's analysis and reading of the Michigan law as dictating the grant of the summary judgment in its favor; however, asserts that the District Court in the first instance erred in considering Michigan law as guiding the interpretation and construction of the insurance contract provisions in lieu of the law of the State of Illinois. Insurer cites *Ingersoll*, 46 Ill.2d at 49, 262 N.E.2d 593 and *P. S. & E.*, at 127 as establishing the Illinois' conflict of laws doctrine which directs the selection of the state holding the "most significant contacts" in the relationship among the parties as the state whose law should govern the substantive contractual rights and duties of the parties.

We note that the District Court fully considered that contention and flatly rejected it. Insurer does not cross appeal on any assertion of error, so we do not reach the issue nor express any opinion on the effect of the tort claim conflicts of law doctrine enunciated in *Ingersoll* and considered in *P. S. & E.* We adopt the District Court's conclusion to apply the law of Michigan as the law of this case. The District Court aptly distinguished the facts in *P. S. & E.* from those of this case which conclusively establish the place of making the policy and rightfully, we believe, concluded *P. S. & E.* to be inapposite.

*Guarantee & Accident Company v. Ladd,* 299 F. 562 (6th Cir. 1924) [hereinafter cited as *London*] as its guide.

The insurance coverage in *London* read: Double benefits will be paid "if such injuries are sustained while riding as a passenger . . . [in a passenger elevator]." At 563. The insured's death "came [about] from falling down an elevator shaft in the Garfield Apartments . . . . There were no eyewitnesses of the accident, but, as the insured was found in the bottom of the shaft in the basement, the carriage found standing at the second floor, and the door of the shaft on the first floor found to be open, it would seem that he must have walked through the door on the first floor into the open elevator shaft." At 564. The court held that "the meaning of the expression 'while riding,' the term 'passenger elevator,' as here used, cannot be held, in [its] judgment, to refer to more than the car or carriage," and denied double indemnity liability under the policy since it was "clear that the insured never entered the car itself." At 565.

The District Court drew from its comparison of the wording of the *London* coverage with that in the Cane accidental death provision the definition and meaning of the Cane phrase "in or upon" as above stated, and following *London,* denied liability.

■ We are not able, as was the District Court, to discern any material difference in the wording of the *Quinn* and Cane accidental death provisions, respectively. Each of the provisions grant coverage to the respective insured "while . . . a passenger on [in or upon] a public conveyance." The placing of any material difference in the meaning of the prepositions "on" or "in or upon" would be rooted in a mere quarrel with words and most unrealistic. If we were restricted to a comparison of policy language for disposition of Cane's claim, we would liken the Cane coverage to that in *Preferred Acc. Ins. Co., supra,* the companion case to *London,* which allowed coverage.

However, and in any event, we are satisfied that making a comparison of the language of the two coverages to reach the meaning and definition of the Cane insurance coverage is beside the point and traveling on the wrong track.

■ We conclude the insured's apartment house *elevator-passenger status* involved in *London* and its companion case to be inapposite to the Cane *common carrier-passenger status* involved in this case, which is all that is required under *Quinn.*

We turn our discussion to the ultimate rationale and holding developed and enunciated in *Quinn.* There the insured was struck and killed by a taxicab while he was in the process of alighting from the streetcar to the public street. The only material factual difference between the common carrier-passenger status of Quinn and Cane, respectively, was that Quinn was engaged in getting safely *off* and Cane in getting safely *on* a public conveyance, a difference without legal consequences. The jury in *Quinn,* under the court's instructions geared to the Michigan law of public carrier-passenger rights and duties, faced the factual query as to whether Quinn was at the time he was struck a passenger then under the momentum of the moving streetcar or a traveler under his own power on the street or highway, and resolved the same in Quinn's favor as then being a passenger on the streetcar. It is important to note that the instruction did not require the jury to find that Quinn was physically "on" the streetcar per the language of the coverage.

The main concern of the Supreme Court in *Quinn* was the insurer's contention that, as between a passenger and the passenger's insurer, a different rule should be applied than between the passenger and the carrier on the question of whether the insured was a passenger at the moment he was struck. The Supreme Court definitely rejected the contention and held the defendant insurance company bound to the same standards and tests for determining the existence

of the insurance-passenger status as imposed upon the streetcar company or operator of other public conveyances in determining the common carrier-passenger status. The Supreme Court, having thus bound the insurance company to the carrier-passenger relationship test imposed upon the carrier, turned its attention to the question as to when the relationship of carrier-passenger on a streetcar terminates. That question was posed to the opposite pole from Cane's stance and beyond our inquiry, as we are interested in the question as to when the relationship of carrier-passenger begins or commences under the Michigan law.

The important teaching to us from *Quinn* is the Supreme Court's enunciation of Michigan law, 195 N.W. at 428:

"At the time the provision, 'while traveling as a passenger on a [public conveyance]', was adopted by [the Insurer] and made a part of its contract, that phrase had well-understood meaning in the law, and it is reasonable to suppose that the meaning given to it by the courts was well understood and considered by [the Insurer] before making it a part of [the accidental provision], and it was well known by both parties when the contract was made that, should the parties afterwards disagree upon the question of liability, *the courts would probably give the language the same construction they had given it in cases where transportation companies were defendants.*" (Italics supplied).

Counsel has cited *Rice,* and our independent search reveals no other authority, for the Michigan rule of determining the beginning or commencement of the carrier-passenger relationship. The factual picture in *Rice* showed Rice standing on the platform in front of the waiting room with the then intention of boarding an expected streetcar. At that loading point, it was customary that the streetcars would stop for passengers on being signaled. As a streetcar approached, Rice signaled it to stop by waving his arms. However, the car did not stop and sped by at a high rate of speed causing Rice in some way by the suction of air to be thrown against the building and injured.

The Supreme Court of Michigan in *Rice* for the first time answered the question when Rice was constructively a passenger and the defendant owed him a duty as such as follows:

" 'The relation of carrier and passenger commences when a person with the good-faith intention of taking passage, and with the express or implied consent of the carrier, places himself in a situation to avail himself of the facilities for transportation which the carrier offers. In case of a railroad this relation arises not merely when the passenger enters the train with the ticket already purchased, giving him a contract right to ride, but when he enters upon the premises of the carrier, with intention to take a train in due course. . . . Those who by express or implied assent are waiting in the passenger room . . . *or are crossing the premises of the carrier for the purpose of going upon a train,* or are in the act of mounting the car steps, are passengers, provided their acts are such as are presumed to be known and assented to by the agents of the railroad company having authority in the matter, and regardless of whether or not a ticket has been purchased, if no rule or regulation of the company is being violated." (Italics supplied). 175 N.W. at 458.

We have been cited *Moffit* wherein the Supreme Court of Michigan citing *Wilson* reiterates the rule in Michigan that the relationship of carrier-passenger continues after a passenger leaves one car and traverses other areas in order to transfer to another car through the following conclusion 200 N.W. at page 275:

"[T]he weight of authority in this country is to the effect that the relation of passenger and carrier continues while the passenger is transferring from one car to another, he having been furnished a ticket enabling him to do so, when a transfer from one street car to another is part of a con-

tinuous trip. [Citing numerous authorities]."

The trilogy of *Rice* at the beginning of the travel, *Moffit* during the travel, and *Quinn* at the termination of the travel inescapably removes the necessity of a passenger to be "in or upon" the actual car or boat moving the passenger in order to establish or maintain the carrier-passenger relationship. Like the Michigan court in *Quinn,* we "suppose" the Insurer "well understood and considered" the quoted rationale and holding of *Rice, Moffit,* and later *Quinn* as fixing the meaning of while the insured was a passenger in or upon a public conveyance" before making that law "a part of its contract."

We conclude that *Quinn* dictates that the *Rice* rule and test of common carrier-passenger status be applied in determining the commencement of the passenger status of Cane under the accidental provision.

The summary judgment entered by the District Court is reversed and the cause remanded for further proceedings consistent herewith

Reversed and remanded.

PELL, Circuit Judge (dissenting).

Dean Cane contracted and paid for insurance coverage in the event his death occurred while he "was a passenger *in or upon a public conveyance* then being operated by a common carrier to transport passengers." (Emphasis added). While upon railroad premises, Cane crossed tracks to get to a platform where he could board his commuter train which had not yet arrived. While moving across the tracks he was struck and killed not by the train he eventually intended to board but by a freight train.

Upon these simple and undisputed facts in this diversity case, I cannot conceive that the courts of Michigan would hold that Cane had the coverage in issue. I therefore respectfully dissent.

I agree with the majority opinion that the law of Michigan controls in the present case but disagree with that opin-

ion insofar as it expresses that the law of that state requires the tortured construction of plain words at which the majority have arrived. A careful reading of *Quinn v. New York Life Ins. Co.,* 224 Mich. 641, 195 N.W. 427 (1923), and *Rice v. Michigan Ry. Co.,* 208 Mich. 123, 175 N.W. 454 (1908), shows that the holding in each of these cases fails to support a holding of coverage in the present case. The crucial words in *Quinn* were "while traveling as a passenger *on* a street car." (Emphasis added.) In that case, the decedent had been riding on a street car and was in the process of dismounting. The court made it clear that, if the dismounting had been completed, there would have been no coverage:

"The question, therefore, is whether Mr. Quinn had safely alighted on the pavement at the moment he was struck by the taxicab. If he had, he was a traveler upon the highway, and no longer a passenger. If he were in the act of alighting, or had not safely alighted, from the car when he was struck by the automobile, he was a passenger within the meaning of this rule." 195 N.W. at 429.

The Michigan court then reviewed the testimony and concluded:

"We are inclined to the opinion that the testimony of these two witnesses would justify an inference by the jury that Quinn was struck while in the act of alighting, and before he had safely alighted onto the pavement." *Id.* at 429.

Upon this basis, the judgment of the trial court holding that there was coverage under the particular policy was affirmed. The *Quinn* case thus stands for nothing more than that a person is still a passenger "traveling on a street car" even though the vehicle itself was not moving, or traveling, along its tracks. He was "on" the conveyance physically and actually. The court did quote generally from 4 Ruling Case Law 1407 with regard to the duty owed by common carriers to its passengers with regard to

safety where the carrier has exclusive control of its tracks and stations.

The duty of care owed by a common carrier to its passengers, actual or prospective, would seem to have little bearing on the construction of an insurance contract relating to a passenger "in or upon a public conveyance," yet the law concerning the common carrier's general duty of care owed to the traveling public was all that was involved in *Rice*. That was a negligence case against a common carrier and concerned a plaintiff injured while on the carrier's station platform.

"He knew that a through car on defendant's line would pass there about that hour, and that it would stop for passengers on being signaled. It is his claim that as the car approached the crossing from the south, and when about 35 rods distant, he signaled it to stop by waving his arm; that the car did not stop, but passed by at a speed of from 50 to 60 miles per hour; that, expecting it to slacken and stop, he stood near the edge of the platform and was caught in some way by the suction of air, thrown against the building and then the car, and badly injured." 175 N.W. at 455.

In *Rice,* while the plaintiff had not boarded the moving car he obviously was injured according to the jury's verdict by the negligent operation of the vehicle on which he was an intended passenger. Of course, in the case before us, the vehicle which the decedent intended to board had not arrived at the station yet, indeed as far as the record shows was no place within sight. That, however, insofar as the duty of care owed by a carrier to both passengers and intended passengers, as will be discussed hereinafter, is immaterial.

One issue as stated by the Michigan court was whether "the plaintiff [was] *constructively* a passenger and did the defendant owe him a duty as such? " *Id.* at 458. (Emphasis added.) The court in concluding that the relationship of a passenger was established under the law pertaining to carriers then quoted from 6

Cyc. 536. [6 Encyclopedia of Law and Procedure] The quotation from *Rice* in the majority opinion is not of the words of the Michigan Supreme Court but rather is a part of that court's quotation from Cyc. This is not, as the majority opinion suggests, the court's answering "for the first time" when a person in the position of Rice is constructively a passenger insofar as a duty is owed to him by his intended carrier. The carrier law quoted from Cyc. is in a volume published in 1903, 16 years before the *Rice* opinion. It does not purport to state law applicable to carriers which is peculiar to Michigan but instead deals with law of general application. This law pertaining to carriers was not new in 1919 and indeed is still the law. Thus, in the second successor work to Cyc., Corpus Juris Secundum, it is stated:

"A person who, with the bona fide intention of becoming a passenger and with the express or implied assent of the carrier, enters on the carrier's premises, at a proper place, in a proper manner, and at a proper time, ordinarily, has the status of a passenger even before entering the carrier's vehicle." 13 C.J.S. Carriers § 556 at 1061 et seq.

Among other cases cited in the cumulative pocket part to that volume is *Ketchum v. Denver & Rio Grande Western R. Co.,* 175 F.2d 69 (10th Cir. 1949), which states the law pertaining to carriers, not as the law of a particular state, but as general law:

"The relation of carrier and passenger arises, and the duty of the carrier to the passenger attaches, when the latter enters the station premises for the purpose of boarding a train of the carrier. Such relationship precedes the actual boarding of the train and comes into being when a person, with the consent of the carrier, express or implied, enters the appropriate premises of the Railroad Company with the bona fide intent to avail himself of the transportation facilities which the carrier offers." (Footnote omitted.) 175 F.2d at 71.

Thus, if the law pertaining to what creates the relationship of passenger, insofar as a carrier is concerned, is to be carried over to construing an insurance contract, it is not necessary to look to the Michigan law for the law appears to be the same in practically all jurisdictions with regard to the carrier-passenger relationship. I fail, however, to discern why law, and it would appear to be salutary law, which has developed as a somewhat sui generis area of the law, would be "supposed" to have been carried over into contract law so as to distort the clear and explicit words that the passenger to be covered must be "in or upon" the conveyance.

A person who is not even in the process of "safely getting *on* a public conveyance" can by no conceivable stretch of the imagination be said to be "a passenger in or upon a public conveyance then being operated by a common carrier to transport passengers for hire." That is all that Cane paid for in the way of coverage and this court should not rewrite the contract. Even if we were to assume *arguendo* that the carrier law would carry over and give Cane the status of a passenger, he was not "*in or upon* a public conveyance then being operated by a common carrier." (Emphasis added.)

The words "in or upon," as used in an accident policy, should consistently with *general principles applicable to insurance policies* be given a broad and liberal construction consistent with the context of the whole clause in which they appear but where there is no ambiguity, the language must be considered in its plain and easily understood sense. 10 Couch on Insurance 2d § 41:289 at 282 (1962). The Couch text (see also §§ 41:254, 255, 261, and 262) indicates that the terms are given their ordinary meaning in connection not only with automobiles but with other conveyances; however, the cases in the insurance field where "in or upon" or equivalent expressions have been used all involve some contact with the conveyance upon which passage is contemplated. Thus, cases have involved

one riding in places other than those customarily devoted to passengers, such as the platform of a passenger car or its steps, or in the case of an automobile, the running board. Even the cases where there has been some physical contact with the intended conveyance have gone both ways. Here, of course, there was no relationship whatsoever with being "in or upon" the intended conveyance. The result here should be based upon the plain and easily understood sense of the words used.

In sum, even if Cane could be considered in law as a "passenger," he was not at the time of his accidental death "in or upon a public conveyance then being operated by a common carrier to transport passengers."