Claree **EDWARDS**
v.
**MUTUAL OF OMAHA INSURANCE COMPANY.**
No. 87-179.

District of Columbia Court of Appeals.

Argued May 21, 1987.

Decided Sept. 18, 1987.

---

a common carrier embrace a person who has disembarked from the vehicle, but has not reached a zone of safety?" *Edwards v. Mutual of Omaha Ins. Co.*, No. 86–5238 (D.C.Cir. Feb. 20, 1987) (order certifying question of law to District of Columbia Court of Appeals). We hold that such policy language does not cover one who has disembarked from a common carrier, even though the person has not yet reached a "zone of safety" when an injury occurs. In other words, a person may complete "getting off" the vehicle, and thus cease to be a passenger for purposes of an insurance policy such as the one at issue here, even though he or she has not yet reached a "zone of safety."

## I.

The Circuit Court has given us a statement of relevant facts; moreover, the appellant there has provided excerpts of the trial record that include the District Court order granting summary judgment for the insurance company. We may draw on both sources for facts in more precisely framing the legal question certified to us. *Penn Mutual Life Ins. Co. v. Abramson*, 530 A.2d 1201 (D.C.App.1987). We rely, then, on the following factual summary.

Donald Edwards boarded a Washington Metropolitan Area Transit Authority bus and remained there until the bus reached its terminus. The driver then told Edwards, who was intoxicated, that he must leave the bus. Edwards did not respond. The driver himself removed Edwards and left him standing on the curb toward the rear of the bus. The driver then went back into the bus and began to pull the vehicle away from the curb. As the bus moved, Edwards fell under its wheels and later died of the injuries he sustained.

Edwards held a life insurance policy with Mutual of Omaha Insurance Company paying $30,000 for accidental death occurring while a "pedestrian" and $150,000 for accidental death while a "passenger ... riding in or getting on or off any public air, land or water conveyance provided by a common

Aaron M. Levine, Washington, D.C., for Claree Edwards.

David F. Grimaldi, Washington, D.C., for Mutual of Omaha Ins. Co.

Before FERREN, BELSON, and TERRY, Associate Judges.

FERREN, Associate Judge:

The United States Court of Appeals for the District of Columbia Circuit has certified to this court, pursuant to D.C. Code § 11–723 (1987 Supp.),[1] the following question of law: "Does a provision in a life insurance policy that covers any 'passenger ... riding in or getting ... off' a vehicle of

---

1. Congress enacted the certification statute as part of the District of Columbia Judicial Efficiency and Improvement Act of 1986, Pub.L.

No. 99–573, § 7, 1986 U.S.CODE CONG. & AD.NEWS 2 (100 Stat. 3228) (to be codified at D.C. Code § 11–723.

carrier...." The appellant in the Circuit Court, Claree Edwards, is Donald Edwards' widow and beneficiary of the insurance policy. She has sued for the higher payment, contending that Edwards was still a "passenger ... getting ... off of" the bus when he suffered the fatal injury. The District Court granted the insurance company's motion for summary judgment; it concluded that, on the undisputed facts, Edwards had "gotten off" the bus and thus had ceased to be a passenger when the driver left him standing on the curb next to the bus.

## II.

Claree Edwards argues that the District Court's interpretation of the expression "getting off" a bus was mistaken. She contends a bus passenger should not be viewed as having "gotten off," and an insurance company should not be absolved of liability under an insurance policy applicable to common carriers, until the passenger has reached a "zone of safety." This zone of safety standard derives from decisions delineating the tort liability of a common carrier for injuries suffered by a disembarking passenger. Courts have frequently held that the heightened liability a common carrier owes its passenger lasts until the passenger has alighted from the carrier and reached a safe place. *See, e.g., Patton v. Minneapolis St. Ry. Co.,* 247 Minn. 368, 77 N.W.2d 433 (1956); *Tri-State Coach Corp. v. Stidham,* 191 Va. 790, 62 S.E.2d 894 (1951); *Victorson v. Milwaukee & Suburban Transport Co.,* 70 Wis.2d 336, 234 N.W.2d 332 (1975). The Michigan Supreme Court many years ago adopted this zone of safety standard for insurance contract clauses that cover accidents befalling a person "while travelling as a passenger" on a common carrier. *Quinn v. New York Life Ins. Co.,* 224 Mich. 641, 195 N.W. 427 (1923). The zone of safety test is, clearly, quite broad; the United States Court of Appeals for the Seventh Circuit has read the *Quinn* rule to mean that an insurance clause covering "a passenger in or upon a public conveyance" could apply to a person hit by a train while crossing railroad tracks to reach the platform at which a different commuter train was due to arrive. *Ludwig v. Massachusetts Mutual Life Ins. Co.,* 524 F.2d 376 (7th Cir.1975), *vacated on other grounds,* 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976).

■ The District Court in the present case rejected the zone of safety test as the proper interpretation of the contract language at issue here. Instead, the court ruled that, because the expression "getting off" a bus was clear and unambigous, it did not warrant an extraneous gloss such as the zone of safety standard; the court concluded that, on the agreed facts, Donald Edwards "clearly was a pedestrian and not a passenger" when the accident occurred. We agree with the District Court that the zone of safety standard does not govern the limits of an insurance policy covering the insured while a "passenger" on, or while "getting off," a common carrier.

In *Quinn,* the court concluded that the terms of the insurance policy at issue were specifically derived from established rules of common carrier liability for injuries to "passengers"; hence, the insurance contract was understood by the parties directly to incorporate the broad definition of common carrier liability. 224 Mich. at 641, 195 N.W. at 427. The contract language at issue here is more specific than that in *Quinn,* for it states that one shall remain a "passenger" while—and only while—"as a passenger ... riding in or getting on or off" a conveyance. This language is sufficiently clear to preclude resort to the significantly broader definition of tort liability based not on the terms of each particular contract but on general principles of public policy. *See New Amsterdam Casualty Co. v. Fromer,* 75 A.2d 645, 646 (D.C.1950) (no need to apply the rule that all doubts should be resolved in favor of the insured where contract language is unambiguous and thus free from doubt). Accordingly, the District Court was correct to focus on the question whether Edwards "had completed his departure from the bus" before he fell beneath its wheels.

■ The expression "getting off" a bus is not inherently ambiguous; its meaning will generally be clear enough, and it does not require an interpretive gloss borrowed from another form of liability. This is not to say, however, that it is always obvious whether a person has, in fact, "gotten off" a bus when an accident occurs. As with

any expression, the meaning of "getting off" is bound to prove controversial, and in this sense ambiguous, when applied to a specific fact situation. No simple, concrete test, such as a test that would equate being off the bus with the moment of losing physical contact with it, could solve every dispute about whether a person had ceased to be a passenger under an insurance contract with the language at issue here. *See Carta v. Providence Washington Indemnity Co.,* 143 Conn. 372, 376–77, 122 A.2d 734, 736 (1956). That we do not need to apply a rule of liberal construction to resolve an inherent ambiguity does not mean we adopt a strictly literal construction to the term "getting off." *See id.; see also Katz v. Ocean Accident & Guar. Corp.,* 202 Misc. 745, 112 N.Y.S.2d 737 (N.Y.C. Mun.Ct.1952). It appears that "no general rule of interpretation can be formulated *in vacuo." Saint Paul-Mercury Indem. Co. v. Broyles,* 230 Miss. 45, 92 So.2d 252, 254 (1957). At most, perhaps, one can say that the notion of "getting off" a vehicle includes "all acts normally performed under similar circumstances" by persons departing a similar vehicle and is complete when one "has embarked upon an entirely different course of conduct." *Stoddard v. "AID" Ins. Co. (Mutual),* 97 Idaho 508, 510, 547 P.2d 1113, 1115 (1976); *Carta,* 143 Conn. at 378–79, 122 A.2d at 737. Accordingly, although the language "getting off" a vehicle does not as a matter of law presuppose that the alighting passenger has reached a zone of safety, "[s]ome reasonable length of time must be allowed a person, after getting out, for the completion of acts which can reasonably be expected from those in similar situations." *Carta,* 143 Conn. at 377, 122 A.2d at 736 (distinguishing between insurance policy coverage for person "who gets both feet on the ground after emerging from the vehicle" and is injured while closing door, and no coverage for person who has closed door and walks to front of car, only to be injured when she slips and car rolls over her).

Some courts have liberally extended the *Carta* analysis to a point approaching a zone of safety definition for "alighting from" a vehicle. In *Nelson v. Iowa Mutual Ins. Co.,* 163 Mont. 82, 85–86, 515 P.2d 362, 364 (1973), a car accidentally slipped off the road during a blizzard, and the driver, leaving a blood trail, was found dead over a hundred feet away from frost-

bite and exposure. Without resolving whether bodily injury occurred within the vehicle, the court applied the term "alighting from" a vehicle to include, at least on the facts of that case, the entire course of the insured's actions "directed to extricating herself from the car to a place of safety." The court did not rely on common carrier liability but sought merely to apply a common sense idea of the actions required to "alight" from a car during blizzard conditions when the temperature was eight degrees below zero with a high windchill factor. In *Whitmire v. Nationwide Mutual Ins. Co.,* 254 S.C. 184, 190–92, 174 S.E.2d 391, 394 (1970), the court held a passenger was in the process of "alighting from" a car parked on the wrong side of the road when he was at the rear of the car, after exiting, and was injured as the car was hit by an oncoming vehicle. We offer no opinion of our own on *Whitmire* and *Nelson* and decline to read a "place of safety" test into the contract language here. We recognize, however, that, on the facts of a particular case, reaching a position of safety may conclude the act of getting off or out of a vehicle.

Because we have been asked only to address a legal question, we express no opinion on the District Court's ruling that, as a matter of law on the undisputed facts, Edwards had completed disembarking and so had ceased to be a passenger when he fell beneath the wheels of the bus.